## STATE ex rel. BROWN et al. *vs.* SLAVIN.

### ALTERNATIVE WRIT OF MANDAMUS.

Heard April 7.]　　　　　　　　　　　　　　[Decided May 4, 1860,

### *Mandamus—Treasurer.*

Where a public treasurer has different funds in his hands, applicable to different objects, and an order is drawn on him to pay an account out of *any moneys* in his hands, without designating the particular fund from which it is payable, the

treasurer is not obliged to pay such order, unless there is money in the fund from which the amount ought to be paid, even though he may have a sufficient amount to pay the order belonging to another fund.

An alternative writ of mandamus will be quashed on motion, if the petition therefor does not state sufficient facts to entitle the relator to the writ.

The relation in this case was filed on the 19th of March, 1860, and an alternative writ issued the same day. The relation set forth, that the Board of Education, of the city of Madison, on divers days in 1859 and 1860, had issued sixteen warrants on the treasurer of the board, amounting to $900, due to several persons for wages as teachers in the common schools of the city, which were signed by the president and clerk of the board, whereby the board required the treasurer to pay, out of any moneys in his hands, as such treasurer to the persons named, the several amounts. That the orders were assigned and delivered to the relators Brown and Richardson, for a valuable consideration, and that they now owned them. That on the 19th of March, 1860, they presented the orders to the defendant, John H. Slavin, the treasurer of the board, and demanded the payment of the same, out of any moneys in his hands as such treasurer. That he then informed them there was in his hands, as treasurer, a sufficient amount of money to pay the orders; but he refused to pay the same or any of them. Wherefore they prayed for a mandamus &c.

On the 7th of April, the relator moved the court to quash the writ, because it did not contain such a statement of facts as entitled the relator to the relief sought, and was insufficient to enable the relator to call upon the respondent for further answer.

*J. T. Clark,* for the defendant.

*Wakeley & Tenney,* for the relator.

*By the Court,* COLE, J. We consider the relation in this case defective in a material point, for not alleging, as we think it ought, that the respondent had in his hands moneys which could properly be applied to the payment of the orders mentioned in the relation. An examination of the various provisions of law, defining the powers and duties of the

board of education of the city of Madison, most clearly shows, we think, that the said board were to have under their control different funds, or rather moneys raised for certain specified purposes, and it was not contemplated that moneys raised for one purpose should be applied to another, while the former purpose was not provided for, or unaccomplished. For instance, that moneys raised to meet interest upon borrowed money should not be applied to the payment of teachers' wages, when such interest remained unpaid. This is apparent from the various provisions having a bearing upon this subject. The board is required to certify to the common council the amount of money necessary to be raised in any one year for each or all of the purposes specified in section 11 chap. 49, Pr. Laws, 1855; chap. 8 of the charter; Pr. Laws, 1856, 107, § § 1, 2, and 3; Pr. Laws, 1855, 55; and by § 11 chapter 49, it was made the duty of the officers therein mentioned, to cause to be raised by taxation, such sums as might be determined upon and certified to them by the board necessary: 1. To purchase, lease, or improve sites for school houses. 2. To build, purchase, lease, &c., school houses. 3. To purchase, exchange, &c., school apparatus, furniture, &c. 4. To purchase fuel, and defray contingent expenses, of the schools. 5. To pay any balance due teachers after the expenditure of the public moneys provided for that purpose. And 6. To pay interest due upon any moneys which the board was authorized to borrow by the act. By the 14th section of the same act, it will be seen that the board were required to determine and certify the sums in their opinion necessary and proper to raise under the 11th section specifying the sum required for each of the purposes therein mentioned. We can see no particular object in these various provisions of law, if all the moneys recommended to be raised by the board were to constitute one fund, and to be applied indiscriminately to any indebtedness which the board might

create. It might so happen that the money raised to build and repair school houses, might be inadequate to meet the indebtedness created by the board for that purpose, in which case it would not be in accordance with the spirit of these provisions to make up the deficiency out of the fund raised to pay teachers, and let the latter go unpaid. Other illustrations might be suggested, but we deem it unnecessary to dwell upon the point.

We are, therefore, of the opinion that it is the duty of the board to apply the funds under their control to the specific purpose for which the money is raised, and it might be well, perhaps, in drawing an order upon their treasurer, for teachers wages, to require it paid out of any funds raised for the purpose of paying teachers, which had not already been appropriated. And for a like reason it should appear affirmatively in the relation, that the respondent had moneys in his hands raised for the purpose of, and which could be applied to, the payment of the orders mentioned therein.

As this is a material part of the relation, the motion to quash must be granted, but with leave to amend upon payment of costs in the respect designated.