[ Argued December 4; decided December 31, 1894.]

## STATE ex rel. BOOTH *v.* BRYAN.
[ S. C. 38 Pac. 618.]

1. MANDAMUS TO COMPEL APPORTIONMENT OF SCHOOL FUNDS — CODE, §§ 2590, 2608, 2619, ACT OF FEBRUARY 20, 1893.—A county school superintendent cannot be compelled by mandamus to make an apportionment of the school fund among the several school districts of a county until such districts, or at least some of them, have made report as required by law: Code, §§ 2590, 2608, 2619.

2. IDEM.—A county school superintendent cannot be compelled by mandamus to make an apportionment of the school fund among the several districts unless it is made to appear that there are some funds in the treasury available for that purpose.

APPEAL from Benton: J. C. FULLERTON, Judge.

The plaintiff Charles Booth prays a writ of mandamus founded upon the following state of facts, which appear from the alternative writ: The relator is a resident, voter, and taxpayer, and has been for ninety days last past, the duly appointed, qualified, and acting superintendent of common schools for Lincoln County, Oregon. The defendant E. L. Bryan is now, and for the past six months has been, the duly elected, qualified, and acting superintendent of common schools for Benton County. On the eighth of May, eighteen hundred and ninety-three, the relator demanded of the defendant that he apportion to the various school districts in Lincoln County their *pro rata* proportion of the school funds for the year eighteen hundred and ninety-three, the same as if Lincoln County had not been created or organized, which duty defendant peremptorily refused to perform, and still refuses to do the act required of him. The relator has a family of minor children of school age entitled to school privileges. A demurrer was interposed to the writ, and, among others, the following grounds therefor were assigned: It does not appear that the school clerks of Lincoln County have complied with the law in reference to making their report to defendant as provided in section 2608 of the act of February twentieth, eighteen hundred and ninety-one; that no facts are stated entitling the plaintiff to any relief as against defendant, or showing it to be the duty of defendant to do any of the acts required of him. The demurrer was sustained by the court below and the writ dismissed, from which judgment this appeal is prosecuted.

AFFIRMED.

For appellant there was a brief by *Messrs. John Kelsay* and *J. K. Weatherford,* and an oral argument by *Mr. Kelsay.*

For respondent there was a brief by *Messrs. W. S. Mc-Fadden, John R. Bryson,* and *Walter S. Hufford,* and an oral argument by *Mr. McFadden.*

Opinion by MR. JUSTICE WOLVERTON.

This controversy is the outgrowth of an act of the legislative assembly of the State of Oregon, which became a law February twentieth, eighteen hundred and ninety-three, constituting Lincoln County from the western portion of Benton. By section 11 of said act it is provided: "It shall be the duty of the superintendent of schools of Benton County, within sixty days after the appointment of the superintendent of schools of Lincoln County, to make out and forward to said superintendent of schools of Lincoln County a true and correct transcript or abstract of the annual reports of the clerks of the various school districts embraced within said Lincoln County; and he shall also at the same time of making the apportionments of the school fund for the year of eighteen hundred and ninety-three, apportion to the various school districts within Lincoln County their *pro rata* proportion of said school fund the same as if said Lincoln County had not been created and organized." Section 2590, subdivision 5, Hill's Code, makes it the duty of the county superintendent, on the third Monday in April and August of each year, to make an apportionment of the entire school fund then in the county treasury as follows: Of the school fund in the treasury of his county that has been collected in pursuance of the school tax levy of the county court of his county, he shall apportion the sum of fifty dollars once a year to each of the several districts of the county that has reported to him as required by law, and all the balance of the school

funds of whatever nature thereafter remaining in the
treasury of the county shall be apportioned by him among
the several districts that have reported to him as required
by law, in proportion to the number of persons in each
district over the age of four and under twenty years; but
if, at the time of making the apportionment, there should
not be a sufficient sum in the treasury collected in pur-
suance of the school tax levy to enable him to apportion
to each district that has reported to him as required by
law the sum of fifty dollars, then he shall apportion the
entire amount in the treasury collected from the school
tax levy *pro rata* among such districts of his county as
have reported to him according to law.   Section 2608
provides: "Districts shall not be entitled to their propor-
tion of the school fund at the disposal of the county school
superintendent unless they shall report to him by the first
Monday of March of each year, and shall have had a
school taught in their district of one quarter's duration in
each year." And section 2619, subdivision 5, requires
each district clerk to make a report to the directors and
citizens at the regular annual meeting on the first Monday
of March of each year, and after all necessary corrections
are made therein, it is then incumbent upon him to file the
original in his office, and immediately forward a certified
copy thereof to the school superintendent of his county,
provided that the same shall be forwarded and filed with
the superintendent by the fifteenth day of March of each
year.   A form is prescribed in which the annual report,
as nearly as may be, shall be submitted to the superin-
tendent.   This form requires a report of the number of
legal voters, the number of persons over four and under
twenty years of age, the number of male scholars, the num-
ber of female scholars, the number of quarters of school
taught, etc.   By section 2716 it is made the duty of the

26 OR.—64.

board of commissioners for the sale of school and university lands, and for the investment of the funds arising therefrom, to distribute among the several counties on the first day of August of each year, and oftener if deemed advisable, the interest on hand arising from the irreducible school fund, in proportion to the number of children resident therein between the ages of four and twenty years; the amount so apportioned to each county to be placed in the custody of the county treasurer, whose duty it is to report the same to the county superintendent for distribution among the several school districts of his county.

1.    From these several statutes it is apparent that the superintendents of the common schools of the several counties obtain the funds for distribution among the school districts of their respective counties from two sources, viz., from the taxes levied by the county court, and from the irreducible school fund. The superintendent is required to distribute whatever amount there may be, of these combined funds in the hands of the county treasurer on the third Mondays of April and August of each year, in accordance with said subdivision 5, section 2590. Two prerequisites, however, are necessary before the county superintendent can make such distribution to any certain district. *First,* there must be school funds in the custody of the treasurer of his county to distribute; and, *second,* the district must have reported to him according to law. We will treat these two conditions in their inverse order.

It is the contention of the learned counsel for the appellant that, according to the letter and spirit of section 11 of the act of February twentieth, eighteen hundred and ninety-three, all school districts of Lincoln County which had a legal existence prior to the creation of that county are entitled to their *pro rata* proportion of the school funds of Benton County for the year eighteen hundred

and ninety-three, and that the law is mandatory upon the superintendent of Benton County to make the distribution of said school funds to the several districts in Lincoln County, the same as if such county had not been created or organized. If it be assumed that the counsel's construction of the law is right and proper,—this, however, we do not decide, nor shall we at this time attempt to make any interpretation of the law in question,—does the alternative writ disclose the facts necessary to place the defendant in default, or to show a dereliction of duty upon his part, requiring the interposition of the court by peremptory mandamus? The alternative writ, issued June twenty-second, eighteen hundred and ninety-three, requires the defendant to make *pro rata* distribution of the school funds of that year among the several districts of Lincoln County, while the superintendent is prohibited by law from making distribution to any district not having reported to him, or not having a school taught therein of three months' duration during the year previous to such report. The writ could not under any consideration be made peremptory, in so far as it may affect the discharge of the duties of the county superintendent touching funds that may accumulate in the hands of the county treasurer subsequent to the issuance of the writ. It is a just presumption that all public officers will faithfully discharge the functions of their respective offices, and observe all the duties enjoined upon them by law, and it would be a work of supererogation for the courts by mandamus or other process to command them to perform their duties *in futuro* as they are by law directed. Courts will not assume or exercise supervisory control over public officers and functionaries, whether state, county, or municipal, nor will they attempt to control their acts, or command them to act, except in cases where there has been a plain violation of official and public duty which the law specially

enjoins upon them, and it is made to appear that some private individual or the public has a legal right or title to the due performance of such duty, and that there exists no other plain, speedy, or adequate remedy in the ordinary course of law. It does not become a duty incumbent upon the superintendent to apportion school funds to any district until such district has made report to him, and has had school taught three months during the year. From the alternative writ it does not appear that a single school district of Lincoln County has complied with these necessary prerequisites to entitle it to an apportionment at the hands of the superintendent. If any have reported, neither the court below nor this court has been advised of it, and it is not a matter of which the courts will take judicial knowledge. How can the court say, then, that the defendant has been derelict, when, under the showing made, the presumption obtains that he is discharging his official duties. Before he can be called upon to make such an apportionment, it ought to be shown that the several districts of Lincoln County, or some of them at least, have made report to the superintendent of Benton County as required by law: *People* v. *Glann*, 70 Ill. 232; *Illinois Canal Trustees* v. *People*, 12 Ill. 254, 52 Am. Dec. 488; *Huston Railroad Company* v. *Randolph*, 24 Tex. 329; *State* v. *Moore*, 39 Ohio St. 486; *Cincinnati College* v. *Larue*, 22 Ohio St. 469; *Martin* v. *Ingham*, 38 Kan. 641, 17 Pac. 162, 174.

2. It would be a useless and vain thing to require the defendant to make a distribution unless there were school funds in the county treasury subject to be distributed; or, in other words, to distribute a fund which had no actual existence. The authorities are abundant, and apparently quite uniform, that where the payment of money or the distribution of a fund by a public officer is the object in view, it must distinctly appear that there is a fund from which the desired payment can legally be made: *State* v.

*Otoe County,* 10 Neb. 19, 4 N. W. 25; *Redding* v. *Bell,* 4 Cal. 333; *State* v. *Slavin,* 11 Wis. 153; *Miller* v. *State* (Kan.), 22 Pac. 326; *Pritchard* v. *Woodruff,* 36 Ark. 196; *State* v. *District of Dubuque,* 11 Iowa, 155; Spelling on Extraordinary Relief, § 1647. As we have seen, there are two sources from which the school fund to be apportioned by the superintendent is derived,— one from the county tax, and the other from the irreducible school fund. No showing is made by the alternative writ that any fund whatever has accumulated in the hands of the county treasurer of Benton County from either of these sources, so that it is not apparent that there is any fund in existence which it is the duty of the defendant to apportion to the several school districts of Lincoln County. The writ is wholly defective in this respect, and is insufficient to support the proceeding. Other questions were raised upon the argument which it is not now deemed important to decide as those considered are decisive of the case. The judgment of the court below is affirmed.          AFFIRMED.

---

[Argued July 18, 1894; decided January 14, 1895; rehearing denied.]