---

(No. 11772.—Judgment reversed.)
THE PEOPLE *ex rel.* William F. Downs, Appellee, *vs.*
L. F. BROWN *et al.* Appellants.

*Opinion filed December 19, 1917.*

1. EVIDENCE—*courts take judicial notice of legislative appropriations.* Appropriation acts are public laws, of which the courts will take judicial notice the same as of constitutional provisions, and it is not necessary to offer them in evidence.

2. MANDAMUS—*want of funds is a sufficient answer to petition to approve a pay-roll or to draw a warrant for payment of salary.* If there is no fund in the control of the officer or body out of which the payment sought to be compelled can be legally made the writ of *mandamus* will be denied, as want of funds is a complete answer to a petition to compel an officer to make or approve a pay-roll or to draw a warrant for the payment of a salary.

3. SAME—*payment of salary cannot be compelled after appropriation therefor has lapsed.* Where an employee under the classi-

fied civil service has been discharged but subsequently obtains a favorable finding of the Civil Service Commission ordering his name placed on the re-instatement list, his petition for *mandamus* to compel the payment of salary of his former employment for the months between his discharge and his re-employment in another capacity will be denied where it is brought after the appropriation from which the salary is to be paid has lapsed. (*People* v. *Secretary of State,* 58 Ill. 90, and *People* v. *Lippincott,* 72 id. 578, distinguished.)

4. SAME—*when appropriation to pay salary lapses.* An appropriation of a certain sum per year for the payment of the salary of an employee until the expiration of the first fiscal quarter after the adjournment of the regular session of the next General Assembly, lapses or ends at the expiration of such fiscal quarter.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

EDWARD J. BRUNDAGE, Attorney General, and CLARENCE N. BOORD, for appellants.

B. L. CATRON, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The relator, William F. Downs, filed in the circuit court of Sangamon county his petition for a writ of *mandamus* directed to the Board of Live Stock Commissioners, the Civil Service Commission, the Auditor of Public Accounts and the State Treasurer, commanding the Board of Live Stock Commissioners to certify a pay-roll for the salary of the relator as messenger of the board at the rate of $70 per month from the time of his discharge by the board on February 1, 1914, to May 1, 1916, the date on which he was certified by the Civil Service Commission to the position of messenger of the State Mining Board, and commanding the Civil Service Commission to approve such pay-roll, the Auditor to issue a warrant for such salary and the State Treasurer to countersign and pay the warrant. The defendants answered the petition, and a replication having been filed,

the cause was heard by the court without a jury, and a writ of *mandamus* was awarded for payment of the salary from the first day of February, 1914, to June 30, 1915, inclusive. The defendants appealed from the judgment.

The facts are as follows: The relator, William F. Downs, was on and prior to July 1, 1911, an employee of the State under the classified civil service as a messenger in the office of the State Board of Live Stock Commissioners, and was so employed on January 27, 1914, at a salary of $840 per year, payable in monthly installments of $70. On January 27, 1914, the board notified him that his services would be dispensed with after February 1, 1914, and the next day the president of the board filed charges of general incompetency against him. On February 1, 1914, the board removed him from his position and refused to permit him to further perform its duties. Thereafter a hearing was had before W. M. Allen, an investigator of the Civil Service Commission, who made a report that the charge of general incompetency was not sustained, and that, while the errors committed by the relator would justify an investigation and temporary suspension, they did not justify dismissal, and he recommended a re-instatement. On June 30, 1914, the Civil Service Commission sent to the relator a card admitting him to an efficiency examination for the position of messenger, to be held on July 3, 1914. The relator attended and took the examination but failed to pass, his general average being 63.06 per cent. On September 29, 1914, the Civil Service Commission passed a resolution reciting the hearing before Allen, the swearing of witnesses and taking of testimony, and found that the charges were proved and discharged the relator from the position of messenger in the office of the Board of Live Stock Commissioners. On May 27, 1915, the relator applied for a rehearing of the charges, and the rehearing was had before Frank Trutter, an investigating officer of the Civil Service Commission, who found that the charge of general incom-

petency was not sustained by the proof, and that, while the errors committed justified an investigation and perhaps a reprimand of the relator, they did not justify dismissal. On September 16, 1915, the Civil Service Commission passed a resolution reciting the investigation and finding that the charge was not proved and ordering the name of the relator to be placed on the preferred re-instatement list for the position of messenger, without allowance of pay for the time of suspension. The name of the relator was placed on the preferred re-instatement list and remained there until May 1, 1916, when he was certified to the position of messenger in the office of the State Mining Board.

The several steps which the relator asked the court to compel the defendants to perform were for the purpose of withdrawing from the State treasury the amount necessary to pay the relator a salary, and the conditions under which that may be done are fixed by the constitution. Section 17 of article 4 of the constitution provides: "No money shall be drawn from the treasury except in pursuance of an appropriation made by law and on the presentation of a warrant issued by the Auditor thereon and no money shall be diverted from any appropriation made for any purpose or taken from any fund whatever, either by joint or separate resolution." Section 18 provides as follows: "Each General Assembly shall provide for all the appropriations necessary for the ordinary and contingent expenses of the government until the expiration of the first fiscal quarter after the adjournment of the next regular session, the aggregate amount of which shall not be increased without a vote of two-thirds of the members elected to each house, nor exceed the amount of revenue authorized by law to be raised in such time; and all appropriations, general or special, requiring money to be paid out of the State treasury, from funds belonging to the State, shall end with such fiscal quarter."

The act of the General Assembly of 1913 appropriated $840 per annum for the position held by the relator until

the expiration of the first fiscal quarter after the adjournment of the next regular session and ended at that time. The General Assembly in 1915 made no appropriation for the salary of a messenger of the State Board of Live Stock Commissioners nor any appropriation from which the salary of the relator could be paid. This suit was begun on May 8, 1916, and there was then no money in the treasury nor in the hands or under the control of the defendants, or any of them, out of which the payment of the relator's salary could be legally made. It does not appear that the acts of the General Assembly making appropriations in 1913 and 1915 were offered in evidence nor that the constitutional provisions were presented to the circuit court, but those acts were public laws, of which the courts had judicial knowledge, and it was not necessary to offer them in evidence. Both the supreme law and the public laws of the State are judicially noticed by the courts. (*People* v. *Hill,* 163 Ill. 186; *Vance* v. *Rankin,* 194 id. 625; *People* v. *Braun,* 246 id. 428; 1 Chamberlayne on Evidence, sec. 605.) If there is no fund in the control of the officer or body sought to be coerced to pay money out of which the payment can be legally made, the writ of *mandamus* will be denied for the obvious reason that courts, in administering the law, will not command an act to be done which is contrary to law. Want of funds being a complete answer to a petition to compel an officer to pay warrants drawn upon him is necessarily a complete answer to a petition to compel an officer to make or approve a pay-roll or to draw a warrant for such payment. *People* v. *Needles,* 96 Ill. 575; *People* v. *Swigert,* 107 id. 494; *People* v. *Pavey,* 137 id. 585; *City of Chicago* v. *People,* 210 id. 84; *Fitzsimmons* v. *O'Neill,* 214 id. 494; 18 R. C. L. 227; 19 Am. & Eng. Ency. of Law, (2d ed.) 795; 26 Cyc. 319; *Dunten* v. *State,* 172 Ind. 59; *McCaslan* v. *Major,* 64 S. C. 188; *People* v. *Reis,* 76 Cal. 269; *State* v. *Bryan,* 26 Ore. 502.

Counsel for appellee regards the decisions in *People* v. *Secretary of State,* 58 Ill. 90, and *People* v. *Lippincott, 72* id. 578, as sustaining the judgment, but that is a misapprehension.   In *People* v. *Secretary of State* a petition for a writ of *mandamus* was filed in this court to compel the Auditor of Public Accounts and the State Treasurer to countersign and pay a warrant for printing paper sold and delivered to the State by the relator.   A contract for paper for the use of the State, in pursuance of law, had been awarded to the relator and partly performed.   The General Assembly had attempted to rescind the contract, and the Secretary of State refused to accept any more paper and the Auditor refused to draw a warrant for the amount due. The answers showed that there was no money in the treasury to pay for the paper, and the court said that if the petition was to compel payment, alone, the answer would be a bar to relief, but where the State had received services or property of an individual under a contract made in pursuance of law, it was the duty of the Auditor to draw a warrant and the Treasurer to countersign it and deliver it to the person entitled to receive it, whether there was money in the treasury or not for its payment, and it should be paid when there were funds for the payment of the claim. The contract was made pursuant to law, and the material question was whether the contract was binding so far as it had been performed before repudiation.   Vouchers were payable by the act of 1849 out of "any moneys in the treasury not otherwise appropriated."   There was no question of the lapsing of an appropriation.

*People* v. *Lippincott, supra,* was also a petition for a writ of *mandamus* commanding the Auditor to issue his warrant for $60, the price of ten volumes of the reports of the decisions of this court.   The only question submitted for decision was whether section 18 of article 4 of the present constitution abrogated all laws in regard to appropriations for the payment by the State for the opinions of this court,

or whether the appropriations would not expire until the end of the first fiscal quarter after the adjournment of the next regular session of the General Assembly. The decision was that sections 3 and 4 of the act of 1849, relating to incidental expenses of State officers and the mode of defraying the same, were in the nature of standing appropriations, which did not expire until the period fixed by the present constitution. That they were standing appropriations was again stated in *People* v. *Day,* 277 Ill. 543, and being such, it was held that the relator's claim should be paid whenever there were funds in the treasury which might be lawfully used for that purpose. The *Lippincott case* was cited in *People* v. *Swigert, supra,* in support of the doctrine that all appropriations, whether general or special, when otherwise unlimited, will continue in force and be available for the purposes for which they were made until the expiration of the first fiscal quarter after the adjournment of the next regular session of the General Assembly, at which time all appropriations must lapse and cease to be of any validity.

The finding of the Civil Service Commission that the charge against the relator was not proved and the order to place his name on the preferred re-instatement list was on September 16, 1915, before the lapse of the appropriation from which his salary could have been paid, but he took no action until the commencement of this suit and permitted the appropriation to lapse. The Auditor therefore had no reason to retain the amount claimed by the relator until it should be judicially determined whether he was entitled to it or not, and by virtue of the constitution the appropriation came to an end and any unexpended balance was turned back into the general funds of the State.

The circuit court erred in awarding the writ, and the judgment is reversed.          *Judgment reversed.*