Argued September 11; affirmed September 18, 1934

# EDDY *v.* STADELMAN
(35 P. (2d) 687)

*Oscar Hayter,* of Dallas, and *Custer Ross,* of Salem, for appellant.

*Ralph E. Moody,* Assistant Attorney General (I. H. Van Winkle, Attorney General, on the brief), for respondent.

CAMPBELL, J. This is a mandamus proceeding for the purpose of having this court interpret chapter 347, Oregon Laws of 1931, as amended by chapter 152, Oregon Laws of 1933, as applied to candidates for nomination for circuit judge of the Second Judicial District. This district consists of the counties of Benton, Douglas, Curry, Coos, Lane, and Lincoln, and the circuit court is comprised of three judges, each one constituting a complete court, elected at large and no designation given by department or position.

The legislature at its session of 1931 enacted chapter 347, Oregon Laws of 1931, and as amended by chapter 152, Oregon Laws of 1933, made provision for the non-partisan nomination and election of Supreme Court judges, circuit court judges and district court judges.

"Sec. 4. When a petition is filed by or on behalf of or a declaration of candidacy is made by only one person as a candidate for nomination to the office of the herein enumerated courts, when there is but one vacancy to be filled, the name of such person shall not be placed upon the primary ballot but such person shall be the nominee for such office; provided, however, that when there are two or more vacancies to be filled for judge of the circuit court in a judicial district having more than one circuit judge, and not divided into departments or positions, and a petition is filed by or on behalf of or declaration of candidacy made by only one person as a candidate for nomination for a

single vacancy or position on said court, the name of such person shall not be placed upon the primary ballot, but such person shall be declared the nominee for the respective vacancy or position; and provided further, that in the judicial districts having two or more circuit judges who are elected at the same election from two or more counties, when a petition is filed by or on behalf of or a declaration of candidacy made by only one candidate for nomination from any one county and when the number of candidates from all counties does not exceed the number of vacancies to be filled, the name or names of such person or persons shall not be placed on the primary ballot, but said person or persons shall be declared to be the nominee or nominees for such office

\* \* \* \* \*

"Sec. 5. At all primary elections to which candidates for judge of any of the herein enumerated courts are to be nominated, where two or more petitions or two or more declarations of candidacy for nomination for candidate for judge of any of said courts have been filed, there shall be prepared and furnished by the several county clerks separate ballots upon which shall be placed the names of the candidates for such office, and after his name, the name of the county in which each candidate resides, and a statement, not exceeding 10 words, of his qualifications and experience, if any such statement is included in his petition or declaration, which ballot shall be entitled 'Judiciary Ballot', and shall contain no other designation. The names of candidates shall be placed thereon without any party designation, and said ballot shall be, with the addition of the name of the county in which each candidate resides, and the statement above referred to, if any, after the name of the candidate, substantially as follows: \* \* \*"

Then follows a sample form of the ballot for the different courts.

"A ballot shall be delivered to each elector by a proper election officer. The two candidates receiving

the highest number of votes as nominees for judge of any of said courts shall be declared the nominees, whose names shall appear on the ballot at the general election; provided, however, that when two or more vacancies in the membership of any of said courts are to be filled and where the officers are divided into positions or departments, the number of nominees shall not exceed two for any one judgeship, position or vacancy, and shall be:

"First, those candidates nominated under the provisions of section 4 hereof; and

"Second, those two candidates receiving the greatest number of votes at the primary election.

"When any candidate shall receive a majority of all votes cast for the office for which he is a candidate at such primary election the name of such candidate receiving such majority shall be printed separately on the general election ballot under the designation 'Vote for one' and the name of no opposing candidate shall be printed on such ballot in opposition to such candidate, but one space shall be left following such name in which the voter may insert the name of any person for whom he wishes to cast his ballot."

Under this law at the primary nominating election May, 1934, G. F. Skipworth, James T. Brand, B. L. Eddy, and Carl E. Wimberly filed as candidates for circuit judge of the Second Judicial District; there being three judges to elect at the general election in November. The election returns show the votes received by the respective candidates as follows: G. F. Skipworth, 22,440; James T. Brand, 21,396; Carl E. Wimberly, 14,961; and B. L. Eddy, 14,854. It is the contention of B. L. Eddy, plaintiff herein, that there were 32,993 votes cast for the office of circuit judge in the Second Judicial District and that neither he nor Carl E. Wimberly received a majority of the votes cast for the office and, therefore, both their names should appear

on the ballot in the general election in November. He brought this action, therefore, to mandamus the Secretary of State to certify to the several county clerks of the counties constituting the Second Judicial District that his name be placed on the ballot as a candidate against Carl E. Wimberly. The above facts are set up in the alternative writ filed in the circuit court.

To the alternative writ the Secretary of State filed a demurrer which after argument was sustained by the circuit court and, the plaintiff refusing to plead further, the court dismissed the writ and plaintiff appeals.

The trend of public opinion, as reflected by the legislature of the state, as well as by the public press, has been, during the past decade, to remove the judiciary of the state, as far as possible, from political strife and yet give the electors an opportunity of selecting those who serve them as judges of the various courts. The law enacted by the legislature of 1931 (chapter 347, supra) removed, as far as humanly possible, the nomination and election of judges of the Supreme Court, circuit courts, and district courts of the state from the struggle of partisan politics. The amendment of the statute by the legislature of 1933 (chapter 152, supra) was an effort to still lessen political turmoil, outside of party line, between such candidates. It was, therefore, therein provided that when any person at a primary nominating election received a majority of all votes cast for the judicial office for which he was a candidate, his name should be printed on the ballot for the general election in November and no other name should be printed thereon for that office or position, but a blank space should be left immediately below, where the voter could, if he should so desire, register some other choice; the legislature no

doubt believing that if the voters gave a candidate a majority in May there would be little probability of a change in sentiment in November.

We frankly admit that the application of this law to the condition at present existing in regard to candidates for circuit judge in the Second Judicial District is not without its difficulties. None of the Oregon cases, heretofore decided on analogous questions, are in point, and it would serve no useful purpose to give an analysis thereof.

■ It should be unnecessary to cite authority for the well-established principle of law that it is the duty of the court to so construe a statute as to give effect to the intent of the law-making body by the language used in the statute: *City of Klamath Falls v. Oregon Liquor Control Commission,* 146 Or. 83 (29 P. (2d) 564) ; 25 R. C. L. 1012.

"While the legislature may pass absurd legislation if it is so inclined, before a court will adopt such a construction of a statute as will lead to an absurdity, it will inquire whether there is not some other interpretation possible which will not lead to that result. If the language employed admits of two constructions, and according to one of them the enactment would be absurd if not mischievous, while according to the other it will be reasonable and wholesome, the construction which will lead to an absurd result, will be avoided." 25 R. C. L. 1019; *State v. Gates,* 104 Or. 112 (216 P. 863).

Under the contention made by appellant, where three persons are to be nominated in a group and there should be four candidates, it would be possible, and quite probable, that all four would receive a majority of the votes cast. This would lead to absurdity.

In a case arising in the state of Washington (*State ex rel. Mills v. Howell*, 93 Wash. 257 (160 P. 760)), under a statute very similar to ours, the reasoning employed by the late Justice Chadwick of the Washington Supreme Court in his concurring opinion, while not necessary to the decision of the case, is quite applicable to the facts in the instant case and we, therefore, quote quite extensively therefrom:

"There has been much, and it seems to me unnecessary, confusion in considering the question of the majority of votes cast with reference to judicial offices. The confusion comes from a disposition to treat the words 'majority of the votes cast' as synonymous with a majority of all the ballots, that is to say, the paper ballots cast by the electors.

"The word ballot, in the sense in which it has thus been employed, is not in the statute, and cannot be read into it by any right rule of construction. It might be so held if there were but two candidates running and one to elect, but from the nature of things, the words 'majority of the votes' cannot be held to be a majority of the paper ballots cast, when there are several candidates and several places to be filled and there is no compulsion or duty upon the voter to vote for the full number to be elected. If we were to accept the terms as synonymous, we would be compelled to say that a ballot, if the voter voted for two names, would be two-thirds of a vote, and if he voted for one name, one-third of a vote. Such a construction would lead not only to the ridiculous, but to the impossible as well.

"Taking, therefore, the plain words of the statute, 'a majority of the votes cast', every individual expression of the elector's will is a vote. Each vote cast for a candidate is a vote.

\*     \*     \*     \*     \*

"Loosely considered, it may be said that a candidate, where three are to be elected, is running against the field, but it cannot be so, for that would be running

one candidate for *one* of the *three* positions, against, not one other place or candidate for the same place, but against *two* other places and all candidates. He would be against three fields.

"For the purpose of the argument, we may assume that the supreme court is a body divisible into nine parts. Three parts are to be filled. A certain number of the electors register their choice for Judge Parker for *one* of these places. It does not follow that, because they vote for two other men for two *other* places, they have cast either one or two votes against Judge Parker. The candidate has no interest in the other places. Nor has the elector who votes for Judge Parker any intention of reducing his vote, or which is the same thing, creating by his vote a standard that will record his vote for others, or any part of it, against the affirmative expression of his will. It follows, by this reasoning, that if there are two candidates and one received more votes than his opponent, he alone is entitled to go upon the general election ballot; and, by the same reasoning, if there are four candidates and two places to be filled, or six candidates and three places to be filled, that is to say, double the number of candidates, or a less number than double the number, the three receiving the highest vote receive a majority of all the votes cast.

\*     \*     \*     \*     \*

"The relator having received less than candidates Parker, Fullerton and Morris, is in no position to challenge their right to go upon the ballot as majority candidates.

"Upon this theory, it will always be possible to determine a majority, whereas counsel for relator frankly admits that, upon his theory, either no one may receive a majority, or a greater number than one-half of the candidates (double the number being on the primary ballot) can receive a majority. To hold, where there are three nominations to be made, and there are six or a lesser number of candidates, all of the candidates, or any greater number than three, can receive a majority of the votes cast would be to violate

every canon of reason and common sense. It would be to say that the legislature provided for a selection by majorities, and then deliberately provided a scheme whereby majorities (although there were candidates equal to double the number or less of the places to be filled) could not be obtained.

"We are bound to give life to all the words of a statute if it can be done. To hold to the contrary of my conclusion would write the word 'majority' out of the statute, and invite the abuse of 'plunking' [plumping] for one candidate, whereas every elector should perform his full duty as a citizen and vote for three. The only way other than this to save one candidate for one place from measuring the votes for one place against the votes for all the other places would be to force the presumption that every elector had performed his whole duty and had voted for three men.

*     *     *     *     *

"The statute, Rem. 1915 Code, § 4842, reads as follows: 'When there are to be elected at any general election one or more judges of the supreme court, or of the superior court of any county, the candidates for each respective office whose names are to be placed on the general election ticket shall be determined as follows: The number of candidates equaling the number of judicial positions to be filled who receive the highest number of votes at the primary election, and an equal number of candidates for such positions, providing there are such candidates, who receive the next highest number of votes, shall be the candidates for such respective offices and their names shall appear on the general election ballot under the designation of such respective offices: Provided, however, that where any candidate for any such office shall receive a majority of all votes cast at such primary election for such office, the name or names of such candidates receiving such majority shall be printed separately on the general election ballot, under the designation "Vote for ....", and the name or names of no opposing candidates or candidates shall be printed on such ballot in opposition to such candidate or candi-

dates, but spaces equaling the number of such majority candidates shall be left following such name or names, in which the voter may insert the name of any person for whom he wishes to cast his ballot'.

"If there be any doubt or uncertainty in the statute requiring construction, we are not compelled to go beyond the statute for a rule of construction. The primary election law, as we said in a former opinion, is intended to be a comprehensive scheme for the selection of candidates to go upon the general election ballot, and it is a familiar rule of construction that where one part of an act is ambiguous or uncertain, if the legislature has put a construction upon some analogous part of the act, the court will follow the legislative interpretation, to the end that, if confusion is to be prevented in the one case, it ought to be prevented in the other by the same method that has been suggested by the legislature.

"In Rem. 1915 Code, § 4827, it is provided: 'In the event that there are more than one position of the same kind to be filled and more candidates of any political party receive majorities of the votes of such party cast at such election than there are positions to be filled, then in that event the number of candidates equal to the number of positions to be filled receiving the highest number of votes shall be the nominees of such political party for such positions'.

"True it is that this section refers to candidates of political parties, but, under the rules of construction that I have suggested, we may adopt it as a guide reflecting the will of the legislature. And now, in this case, granting, for the sake of argument only, that the relator did receive a majority of all the votes cast (which does not appear upon the face of the returns), it leaves a greater number of candidates than there are positions to be filled, and the words 'the one having a majority' of all the votes cast must be construed as the one having the greater number of votes cast, for it is obvious that, as between majority candidates, pluralities must prevail. Otherwise, the intent of the statute would be entirely overcome."

■ The foregoing principles apply with greater force in the instant case where as a matter of fact each of the three judges of the Second Judicial District constitute an independent circuit court. That is, when Judge Brand is holding court in Coos county it is a complete circuit court notwithstanding that Judge Skipworth may be at the same time presiding over a complete circuit court in Lane county and Judge Eddy holding yet another complete circuit court in another of the counties. So that when the statute says a "majority of the votes cast for the office" it does not mean a majority of the ballots deposited. It means just what it says. The confusion arises in determining not what is meant by votes but votes for what office. There are three officials to elect. Neither Judge Eddy nor Mr. Wimberly were candidates for all three places. They were candidates for only one. The votes to be considered are those that were cast to determine who should be the third candidate, and of these votes Mr. Wimberly received a majority.

Conceding, for the sake of argument only, the contention of appellant that the statute means "ballots" cast instead of "votes", then there is another matter that should receive consideration. At the primary election held last May in the Second Judicial District there was what is known, under chapter 152, supra, as the judiciary ballot. On this ballot were the names of two candidates for one position on the bench of the Supreme Court. Also the four candidates, above mentioned, for the three positions on the circuit court of that district. As each voter presented himself to vote, he was given one of these ballots. He was under no obligation to vote for any of the candidates thereon. Some, but not all, who received those ballots voted

for a Supreme Court candidate and undoubtedly did not vote for any candidate for circuit judge. At least, that is a fair presumption to be drawn from the experience of the returns from the many elections heretofore held throughout the state. At no election extending over a territory as extensive as one county, has it ever occurred that every person, voting at such election, expressed a choice for the candidates of each particular office. That is, there were always some voters who neglected to vote for the candidates for one or more offices. That same condition was actually true at said election in said district. While notwithstanding the fact that there were deposited in the ballot boxes 32,993 judiciary ballots, yet the returns show that there were only 27,195 votes cast for the office of Supreme Court judge. It is not possible for the Secretary of State to know how many of the ballots deposited contained a vote for any of the positions on the circuit bench over and above the number of votes cast for the candidate receiving the greatest number of votes. No record is made of the number of ballots cast for the office of judge of that district. As a prerequisite to the Secretary of State placing the name of appellant on the ballot as a candidate for the office of judge in that district at the November election, he must be officially informed that candidate Wimberly did not have a majority of the votes cast for the office, conceding, for the sake of argument only, that such action could be taken in the instant case.

■ Appellant claims that by filing a demurrer respondent admitted every allegation of the writ including the allegation that there were 32,993 votes cast for the particular office, yet the appellant must know that

neither appellant nor any one else knows what number of votes were cast for circuit judge of that district, and the only way that fact can be ascertained is by an inspection of each individual ballot now reposing in the ballot boxes in the custody and control of the several county clerks of the district. None of those ballots may be inspected except on the order of a court of competent jurisdiction.

■ Mandamus will not lie to compel a public officer to perform a duty unless it is shown that a prerequisite to such performance, not under his control, does not make it impossible: *State ex rel. v. Bryan,* 26 Or. 502 (38 P. 618).

The judgment of the lower court will be affirmed. It is so ordered.

BEAN, J., dissents.

———

KELLY, J. (dissenting). In political cases, where, as in this one, interpretation is necessary, the writer believes with the late Josef Kohler, German jurist and publicist, that, "rules of law are not to be interpreted according to the thought and will of the lawmaker, but they are to be interpreted sociologically, they are to be interpreted as products of the whole people, whose organ the lawmaker has become". I Lehrbuch des Bürgerlichen Rechts, Section 38.

In the writer's view, the popular conception of a conclusive result in a primary election is based upon, and limited to, those cases where a majority of the voters by their ballots have expressed themselves as being in favor of such a result. The writer would so limit it in this case; and, for that reason, he dissents.