People of the State of Illinois ex rel. The Western
News Company, Appellee, v. City of Chicago, Ap-
pellant.

Gen. No. 39,321.

Opinion filed October 20, 1937. Rehearing denied November 2, 1937.

BARNET HODES, Corporation Counsel, for appellants;
JOSEPH F. GROSSMAN, First Assistant Corporation
Counsel and J. HERZL SEGAL, Assistant Corporation
Counsel, of counsel.

JOHN L. MCINERNEY and EDWARD H. MURNANE, both
of Chicago, for appellee.

MR. JUSTICE HALL delivered the opinion of the court.

This is an appeal from an order entered on Octo-
ber 2, 1936, directing that a peremptory writ of man-
damus issue out of the superior court of Cook county,
commanding the city of Chicago and certain of its
officers to pay forthwith to the petitioner, The Western
News Company, the sum of $18,025.50, together with
interest from January 14, 1935, at the rate of 5 per

cent per annum to the date of payment, together with costs of the proceeding.

The petition in the cause recites *inter alia* that on January 14, 1935, The Western News Company, petitioner, obtained a judgment against the city of Chicago for the sum of $18,000, entered in a proceeding wherein The Western News Company claimed damages to its real estate, caused by the building of a viaduct, which interfered with the ingress and egress to and from the property of the plaintiff, and that no appeal had been taken from such judgment, that the Western News Company, petitioner herein, in whose favor the judgment was entered, has demanded payment by the city of Chicago of the amount thereof, and that the city has refused to pay. The prayer of the petition is that the writ of mandamus issue compelling the city and its officers to pay the judgment.

In the answer filed by the city, it is stated that at the time of the filing of the petition for mandamus and the issuing of the writ, the city had no money whatsoever for the payment of the judgment, and the answer avers that the city has certain moneys in its judgment fund, levied pursuant to law, for the purpose of paying judgments rendered prior to January 1, 1935, and that such funds are not available for the payment of any judgment rendered subsequent to January 1, 1935. The city further avers that on January 3, 1936, the city council of such city passed its annual appropriation bill for the year 1936, and that thereafter on January 9, 1936, the council passed an ordinance amending the bill so passed on January 3, 1936, in and by which the annual appropriation bill, as amended, it appropriated the sum of $110,000, for the payment of judgments entered subsequent to January 1, 1935, together with interest thereon, and that thereafter on January 29, 1936, the city council passed an ordinance levying a tax for the year 1936, which

included a tax levied for the said sum of $110,000, so appropriated for the payment of judgments entered after January 1, 1935, together with interest thereon, and that a copy of such tax ordinance, properly certified by the city clerk, was filed with the county clerk of Cook county for the purpose of extending this tax levy and putting the same in for collection by the county collector. It is further averred in this answer that the proceeds of this tax levy will not be available for distribution in accordance with the appropriations made for 1936 until such taxes are collected, and that the first instalment levied for the year 1936 would not become delinquent until August 1, 1937, and that it has exhausted its borrowing power as limited by the constitution of the State, and is unable to borrow any money for the payment of plaintiff's judgment. A hearing was had on the petition and answer.

An act to provide for the manner of issuing warrants upon the treasurer of the State or of any county, township, city, village or other municipal corporation and jurors' certificates, provides:

"That warrants payable on demand, shall hereafter be drawn and issued upon the Treasurer of the State or of any county, township, city, village or other municipal corporation, or against any fund in his hands, only when at the time of the drawing and issuing of such warrants, there shall be sufficient money in the appropriate fund in the treasury to pay said warrants."

In *DeWolf v. Bowley,* 355 Ill. 530, a writ of mandamus issued out of the circuit court of Boone county; directing the county clerk of that county to issue warrants upon the treasurer of Boone county payable to the order of the petitioner in that case as a judge's pension. In answer to the petition for the writ, the clerk answered, among other things, that there was no

money in the treasury either arising from the appropriation for the purpose or of moneys otherwise appropriated, with which to pay this pension, and it was urged that this was a complete defense in an action seeking the peremptory relief of mandamus, and in passing upon this question, the Supreme Court said: "Want of funds is a complete answer to a petition for *mandamus* to compel an officer to draw a warrant in a case of this character. *Mandamus* is an extraordinary remedy. Petitioner must show a clear right to the writ. If there be no funds with which to pay the warrant sought, its issuance will not be commanded by writ of *mandamus. People v. Brown,* 281 Ill. 390; *Board of Supervisors v. People,* 222 id. 9." In order to comply with the court's order, it would be necessary to divert funds from the purpose for which they were appropriated and set apart.

Par. 436, ch. 38, § 208 of the Criminal Code, Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 37.396, provides that: "Every person holding any public office (whether State, county or municipal), trust or employment, . . . who shall be guilty of diverting any public money from the use or purpose for which it may have been appropriated or set apart by or under authority of law, . . . shall be fined not exceeding $10,000, and may be removed from his office, trust or employment."

Sec. 2 of art. 7, ch. 24, ¶ 92 of the Cities and Villages Act, Ill. State Bar Stats. 1935, p. 354; Jones Ill. Stats. Ann. 21.192, provides that: "The city council of cities, and board of trustees in villages, in cities and villages having a population of less than one hundred and fifty thousand, shall, within the first quarter of each fiscal year, pass an ordinance, to be termed the annual appropriation bill, in which such corporate authorities may appropriate such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such corporation,

and in such ordinance shall specify the objects and purposes for which such appropriations are made, and the amount appropriated for each object and purpose. No further appropriations shall be made at any other time within such fiscal year, unless the proposition to make each such appropriation has been first sanctioned by a majority of the legal voters of such city or village, either by a petition signed by them, or at a general or special election duly called therefor.''

In *Siegel v. City of Belleville,* 349 Ill. 240, in passing upon this act, and the object and purpose thereof, the Supreme Court said: ''The object of the foregoing statutory requirements is to enable the tax-payer to compel the application of public funds to the purpose for which they were appropriated; to prevent the application of such funds to other purposes and to prevent the raising or expenditure of greater sums of money than are necessary for legitimate corporate purposes. (*People v. Chicago and Eastern Illinois Railway Co.,* 326 Ill. 354; *People v. Eastern Illinois and Missouri Railroad Co.,* 335 id. 245.) The necessity of these requirements and the duty of observing them are exemplified in section 208 of the first division of the Criminal Code (Cahill's Stat. 1931, p. 1052; Smith's Stat. 1931, p. 1056), which provides that every person holding any public office, whether State, county or municipal, who shall be guilty of diverting any public money from the use or purpose for which it may have been appropriated, or who shall be guilty of contracting, directly or indirectly, for the expenditure of a greater sum of money than may have been set apart for the subject matter of the contract, shall be fined not exceeding $10,000 and may be removed from office.''

Sec. 2a of the same art. 7, ch. 24, provides that: ''In cities and villages having a population of one hundred and fifty thousand or more, the city council or

the board of trustees, as the case may be, shall, on or before the fifteenth day of June of the year 1933, and within the first quarter of each fiscal year thereafter, pass an ordinance, to be termed the annual appropriation bill, in which such corporate authorities, subject to the limitations hereinafter contained, may appropriate such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such corporation to be paid or incurred during such fiscal year.''

In this same section, after a detailed statement as to the manner in which such appropriations shall be made in the appropriation ordinance of a city or village containing a population of 150,000 or more, we find the following further provision: ''Except as otherwise specially provided by law, no further appropriations shall be made prior to the passage of the next succeeding annual appropriation bill; provided, however, that the city council or board of trustees, as the case may be, shall, at any time after the first half of each fiscal year, have power, by a two-thirds vote of all the members of such body, to make transfers within any department or other separate agency of the municipal government, of sums of money appropriated for one corporate object or purpose to another corporate object or purpose, *but no appropriation for any object or purpose shall thereby be reduced below an amount sufficient to cover all obligations incurred or to be incurred against such appropriation.''* (Italics ours.)

There is no showing by the petitioner that the appropriation made for paying judgments entered prior to January 1, 1935, was more than sufficient to pay such judgments, and it certainly cannot be claimed that the city council could divert funds appropriated for other specific purposes, police and fire for instance, to pay this judgment.

We are of the opinion that not only were the authorities of the city of Chicago fully justified in refusing to pay the judgment out of funds which would necessarily have to be diverted for that purpose from the purpose for which they were already appropriated, but we are further of the opinion that they would have been liable to a criminal prosecution had they done so. The court was in error in issuing the writ, and the judgment is reversed.

*Judgment reversed.*

HEBEL, P. J., and DENIS E. SULLIVAN, J., concur.