**SUMERLIN v. FOWLER et al.**

No. 6023.

Court of Civil Appeals of Texas. Amarillo.

Jan. 23, 1950.

Rehearing Denied Feb. 27, 1950.

Clay Coggins, Roby, for appellant.

Glover Engledow, Jayton, for appellees.

STOKES, Justice.

On March 13, 1939, the commissioners court of Kent County leased from W. T. McClure Machinery Company a caterpillar tractor and a road grader for a period of three years. A lease contract was executed between them under the terms of which the commissioners court agreed to pay $1,000 cash and execute two county warrants in the sum of $650 each, due May 1, 1940 and May 1, 1941 respectively. On May 11, 1939, another lease contract was executed between the commissioners court and McClure Machinery Company under which the commissioners leased from the machinery company a caterpillar grader and an Allis-Chalmers model tractor for which they agreed to pay an aggregate of $2,700 of which $500 was paid in cash and the remainder to be evidenced by three county warrants, the first in the sum of $734 and the remaining two in the sum of $733 each. The first of these warrants was to become due on May 1, 1940, the second on May 1, 1941, and the third on May 1, 1942. Each contract of lease provided that the county should have the option of purchasing the machinery at any time during the terms of the leases by paying the aggregate amount provided in the contracts respectively as rental. The warrants were executed as provided by the contracts and one of the $650 warrants and two of the

$733 warrants were assigned and delivered by the payee to appellant A. D. Sumerlin. On December 4, 1948, appellant Sumerlin, filed this suit against appellee, John Fowler, the County Treasurer of Kent County, in which he sought a writ of mandamus compelling appellee to pay the warrants held by him. On April 4, 1949, Kent County filed a petition in intervention in which it alleged that the warrants declared upon by appellant were void, illegal and unenforcible because the commissioners court did not have authority to make the contracts. It alleged that the warrants created a debt against the county and no provision was made for levying a tax to pay the same as provided by Sections 5 and 7, Article 11 of the State Constitution, Vernon's Ann.St. It alleged further that the warrants were issued upon "County Highway 2 Fund" and "County Highway Prec. #3 Fund" and that no such funds were in existence at the time the warrants were executed nor had any such funds subsequently been created. Appellee Fowler adopted the pleading of Kent County as his answer and the case was submitted to the court without the intervention of a jury. After hearing the testimony the court rendered judgment denying appellant any relief and he has perfected an appeal to this court.

At the request of appellant the court filed findings of fact and conclusions of law. It found that the county warrants were issued and delivered to the machinery company by order of the commissioners court, as above set out, and that they had been assigned to appellant by the payee. It was further found that Kent County had never created funds known as "County Highway 2 Fund" or "County Highway Precinct #3 Fund" and that the appellee, Fowler, had never been in possession of any such funds or moneys belonging to the county and designated as the funds out of which the warrants provided they should be paid. It was further found that neither at the time the warrants were issued nor at any time since had the commissioners court made provision for revenue or funds with which to pay them or provided a levy of taxes of any nature to create a sinking fund out of which the same should be paid.

Appellant's assignments of error pertain principally to matters of procedure, such as the failure of appellee to verify his answer, overruling appellant's motion for judgment upon the pleadings because of appellee's failure to verify his answer and overruling his motion for judgment because the orders of the commissioners court were res adjudicata and could not be set aside by a proceeding of this nature. None of the irregularities complained of deprived appellant of the right to present his case to the court or resulted in any injury to him and we think the case is controlled by the fundamental principles involved. Sections 5 and 7, Article 11 of the State Constitution provide that no debt shall ever be created by any county or city in this state unless, at the same time, provision be made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least 2 per cent for the redemption of such debt. It has been held many times by our courts that warrants evidencing an attempt by a city or county to incur a debt without, at the same time, complying with the constitutional provisions requiring the levy of a tax to meet interest and sinking fund, are absolutely void. McNeal v. City of Waco, 89 Tex. 83, 33 S.W. 322; J. I. Case Threshing Machine Co. v. Camp County, Tex.Civ.App., 218 S.W. 1; Fabric Fire Hose Co. v. City of Teague, Tex.Civ.App., 152 S.W. 506; City of Aransas Pass v. Eureka Fire Hose Mfg. Co., Tex.Civ.App., 227 S.W. 330; T. & N. O. R. R. Co. v. Galveston County, 141 Tex. 34, 169 S.W.2d 713, 715. In the case last cited the Supreme Court said: " * * * the word debt as used in the Constitution, means any pecuniary obligation imposed by contract, except such as was, at the time of the agreement, within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year or out of some fund then within the immediate control of the county. In other words, if the obligation does not arise as an item of ordinary expenditure in the daily functioning of the county government or if it is not to be paid out of funds then in the county treasury legally applicable there-

to, it is a debt and falls under the condemnation of the Constitution, unless the required provision for its payment is made at the time the obligation is incurred."

It is obvious that it was not within the contemplation of the parties that the obligations were to be satisfied out of current revenues for the year in which they were incurred and issued nor out of any fund then within the immediate control of the county. The warrants were made payable, both by the terms of the contracts and upon their faces, one, two and three years after their dates and they provided for interest, one of them at the rate of six per cent and the other two at the rate of eight per cent per annum.

■ While the contracts purported to be leases of the road machinery, they provided that the county should have the option of purchasing the machinery at any time during the term for which it was leased. In the event the county exercised its option, the purchase price was to be the same as that provided as compensation for leasing it. In its plea of intervention the county alleged that, while the contracts were denominated lease agreements, they were in truth and in fact attempted sales contracts and, that the ruse of "lease agreements" was used as a subterfuge for the purpose of circumventing and avoiding the Constitution and laws of the state. Inasmuch as the consideration provided in the contracts for leasing the machinery was to be paid by the county at all events and without condition of any kind, and the county had the option of becoming the owner of the machinery when the amount provided as consideration for its leasing was paid, we think the contracts should be treated as sales contracts. However that may be, and, whether the machinery was leased or purchased by the county, a debt was created by the contracts and by the issuance of the warrants and, whether the debt was for leasing the machinery or purchasing it, the debt was void because it did not arise as an item of ordinary expenditure in the daily functioning of the county government nor was it to be paid out of funds then in the county treasury or under the control of the county. Not being either of these it necessarily fell under the condemnation of the Constitution because no provision for its payment, as provided by the Constitution, was made at the time it was incurred.

■ There is another fundamental reason why the court correctly denied appellant any relief. The suit was for a writ of mandamus against the county treasurer, requiring him to pay to appellant the sum of $2,397.31, proceeds of the three county warrants held by him. The warrants were issued upon purported funds that had no existence and the appellee therefore did not have in his possession or at his disposal any money belonging to the county that was available to pay the warrants. The very nature of the writ of mandamus implies that, if there is no money or funds in control of the officer or body sought to be coerced or forced to pay money, out of which the payment can legally be made, the writ of mandamus will not lie against him. In administering the law, the courts will not command an act to be done which is contrary to law. In a case of this nature the want of funds is a complete answer to a petition for mandamus. The writ issues only to enforce legal rights and, since appellee, as treasurer of the county, had no funds out of which he was authorized to pay · the warrants, even if they had been legally issued, he could not have paid them, and no error was committed by the court in refusing to enter judgment requiring him to do so. Nueces County Drainage Dist. No. 2 et al. v. Garrett, County Treasurer, Tex.Civ.App., 202 S.W. 1000; People ex rel. William F. Downs v. L. F. Brown et al., 281 Ill. 390, 118 N.E. 67, 5 A.L.R. 563; State ex rel. Murray v. Brown, 141 Mo. 21, 41 S.W. 911.

From what we have said and the authorities above cited, it follows that appellant was not entitled to the writ of mandamus and no error was committed by the court in denying him the relief prayed for. The judgment of the court below will, therefore, be affirmed.