ED. C. LASATER ET AL. v. ALONZO LOPEZ ET AL.

No. 3215. Decided December 10. 1919.

(217 S. W., 373)

1.—Commissioner's Court—Public Roads—County Warrants.

Where the Commissioner's Court, charged with the duty of constructing public roads in the county, determined in good faith upon the issuance

of county warrants, instead of bonds, as a plan of payment, and intending that the instruments should have the effect of warrants, issued them as such, complying with the constitutional requirement in respect to lawful provision by taxation for their payment, it should be plain that their issuance was in violation of law before such securities are invalidated by the judgment of a court.  Warrants so issued, though possessing some of the features of county onds (payable in installments through a period of sixteen and one-half years and having interest coupons attached) and without authority by vote of the tax-payers for issuance of bonds, are here sustained as valid.  (Pp. 183, 184, 189, 190).

2.—Same.

The powers of the Commissioners Court in relation to the building of county roads, except as to the limit of taxation for the purpose, must be provided for by general law (Const., art. 11, sec. 2).  (P. 184).

3.—Same—Statutes Reviewed.

The legislation governing the power of the Commissioners Court to construct public roads and to issue bonds, reviewed: Act of May 13, 1846, Laws, 1st Leg., p. 336; Act of July 22, 1876, Laws, 15th Leg., p. 52 (Rev. Stats., art. 2241); Act of Feb. 11, 1881, Laws, 17th Leg., p. 5; Act of Feb. 1884, Laws, 18th Leg., Called Session, p. 29; Act of March 27, 1885, Laws, 19th Leg., p. 56; Rev. Stats., 1895 arts. 877-881; Act of April 28, 1903, Laws, 28th Leg., 1st Called Session, p. 9; Act of April 12, 1899, Laws 26th Leg., p. 102; Act of May 26, 1899, Laws, 26th Leg.. p. 258; Act of March 23, 1911, Laws, 32d Leg., p. 204; Rev. Stats., 1911, arts. 605-610; Const. art. 8, sec. 9, Amendment of 1883; Rev. Stats., 1911, art. 2242.  (Pp. 184, 185).

4.—Same—Counties—Taxation.

Under authority of the legislation here reviewed, the Commissioners Courts have, under differing limitations, always possessed the power of taxation for providing county roads and other public improvements.  (P. 185).

5.—Counties—Commissioners Courts—Negotiable Securities.

A court charged with the administration of the business affairs of a county is without power, save by special authority, to issue negotiable securities depriving the county of true defenses against the original creditor. Such power is not to be implied and does not exist unless expressly conferred by law.  San Patricio County v. McClane, 44 Texas, 392; Robertson v. Breedlove, 61 Texas, 316, followed.  (Pp. 185-187).

6.—County Warrants—Negotiability.

County warrants such as it has been the custom of Commissioners Courts to issue in payment for public improvements, whether interest bearing or not, have not the character of negotiable instruments.  San Patricio County v. McClane, 44 Texas, 392; Same Case, 58 Texas, 243, followed.  (P. 186).

7.—County Bonds—Constructive Repeal.

The power which had always been possessed by the Commissioners Courts to levy taxes and to issue non-negotiable warrants to pay for the construction of public roads was not annulled by the Act of April 28, 1903 which first authorized them to issue negotiable county bonds for that purpose. (Pp. 187-189).

8.—Same.

Constructive repeal of a statute is not favored by the courts.  It should be declared only in case of a clear repugnancy, an antagonism so absolute that both enactments cannot stand.  (P. 187).

**9.—Same.**

The two powers of the Commissioners Court, that to issue county warrants, non-negotiable, and that to issue negotiable bonds, relate to use of the county's credit in different ways and evidencing its debt by instruments of a clearly different nature. The grant of the latter power cannot be construed as a repeal of the previously existing former one. Stratton v. Commissioners Court of Kinney County, 137 S. W., 1170; Cowan v. Dupree, 139 S. W., 887; Commissioner's Court of Floyd County v. Nichols, 142 S. W., 37; Allen v. Abernathy, 151 S. W., 348, approved.   (Pp. 188, 189).

**10.—County Warrants—Bonds.**

The law relating to issuance of county bonds and requiring authority therefor by popular vote cannot be evaded by entitling them warrants; but it has no application to instruments found to be in fact warrants and issued as such in good faith, not with intent to evade the law, though they possess some of the features of bonds, such as deferred time of payment and interest payment through attached coupons. City of Tyler v. Jester, 97 Texas, 344, followed.   (Pp. 189, 190).

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Jim Wells County.

The suit was by Lasater and others, tax-payers of Duval County against Lopez, county treasurer, the county judge and commissioners, and White, the holder of certain county warrants, which it sought to have declared invalid and their payment restrained. The venue was changed from Duval to Jim Wells County, where trial resulted in judgment for defendants. This on plaintiffs' appeal was affirmed and they obtained writ of error.

*John C. North, Geo. D. Anderson* and *Terrell & Terrell,* for plaintiffs in error.—The Court of Civil Appeals erred in holding that the Commissioners Court of Duval County was authorized to issue interest-bearing warrants extending over a long period of years to build roads and to levy and collect a tax therefor, it being admitted that there was no money in the treasury to pay them, that no election was held to determine whether or not the roads should be built and the warrants issued therefor, and that no part of the proceeds were used to build bridges, and especially so when the warrants were in form and substance bonds. Constitution, art. 11, sec. 2; Revised Statutes, art. 2241; Revised Statutes, art. 605; Mitchell County v. Bank, 91 Texas, 371; Stratton v. Commissioners' Court, 137 S. W., 171; Cowan v. Dupree, 139 S. W., 887.

The Commissioners Courts are not given general authority over the County's business, but merely such special powers as are specifically conferred by the Constitution and laws of the State. Mills v. Lampasas Co., 90 Texas, 602; Bland v. Orr, 90 Texas, 492; Baldwin v. Travis Co., 88 S. W., 484.

The Constitution having directed that the Legislature provide by general laws for the laying out, construction and repairing of

county roads, and the Legislature having by statute directed the performance of this provision in a particular manner, it forbids by implication every other manner of performance, and the Court of Civil Appeals erred in holding that the Commissioners Court of Duval County was authorized or had the power to issue warrants for laying out, construction and repairing of county roads. Bryan v. Sundberg, 5 Texas, 418; Robertson v. Breedlove, 61 Texas, 316; Scott v. Ford, 97 Pac., 99; Johnson v. Baker, 139 Pac. 86; Johnson v. City of Louisville, 74 Ky., 527; 36 Cyc., 1122 (i); 19 Cyc., 23 (note 48).

It would seem that no debt can be created when bonds could not issue, except such as could reasonably be met by current taxation, within a reasonable period of time. Waxahachie v. Brown, 67 Texas, 531; Terrell v. Dessaint, 71 Texas, 770.

*L. Broeter, W. M. Harris,* and *Hicks, Phelps, Dickson & Bobbitt,* for defendants in error.—The County Commissioners Court of Duval County had the power under the Constitution and laws of Texas, in payment of an indebtedness contracted in the building and repair of the public roads of their county, to issue on such terms and conditions as the court in its discretion deemed necessary, and in the absence of fraud, interest-bearing warrants to be registered by the County Treasurer and payable by him out of the special fund for the purpose, created by the Commissioners Court at the time when the indebtedness was contracted; and such power existed, and such warrants were legal and a binding contract upon the County of Duval, even though no election had been theretofore held to ascertain if it was the will of the people of Duval County that such roads should be built and repaired, or that said tax be levied and collected, and it is immaterial that none of the indebtedness evidenced by such warrants was incurred in the building of bridges, and the trial court properly refused the peremptory instruction requested by appellant, the refusal of which instruction is the basis of their first assignment of error. Constitution, article 8, section 9, art. 5, sec. 18, art. 16, sec. 24, and art. 11, sec. 2; Revised Statutes (Vernon's Sayles) articles 2241, 2242, 2244, 1459, 1433, 1432, 1433, subd. 2, arts. 1438, 1439, 7014; Ashe v. Harris County, 55 Texas, 49; San Patricio County v. McLane, 58 Texas, 243; Davis v. Burney, 58 Texas 364; Stratton v. Commissioners Court, 137 S. W., 1170; Cowan v. Dupree, 139 S. W., 887; Allen v. Abernathy, 151 S. W., 348; Commissioners Court v. Nichols, 142 S. W., 37; McWilliams v. Commissioners Court, 153 S. W., 372; Broussard v. Wilson, 183 S. W., 819; Brown v. Graham, 50 Texas, 254; Creswell v. Roberts County, 27 S. W., 737; Ball v. Presidio County, 27 S. W., 702.

County or city warrants are not negotiable instruments in the sense that a *bona-fide* holder takes them free from any equities or de-

fenses in favor of the municipality, but they are so far negotiable or assignable that they may be transferred by delivery when payable to bearer. Dillon's Municipal Corporations, Fifth Edition, Vol. 2, page 1298. A warrant is the command of the council, board or official whose duty it is to pass upon the validity and determine the amount of a claim against the municipality, to the treasurer to pay money out of any funds in the treasury which are or may become available for the purpose specified, to a designated person whose claim therefor has been duly adjusted and allowed. Dillon's Municipal Corporations, Fifth Edition (Vol. 2). A bond is a pure county obligation with the promise of the county to pay bearer a certain sum in future and when properly issued, the holder is an innocent purchaser and the bond is not subject to equities which might have existed at the time of its issuance. Stratton v. Commissioners Court, 137 S. W., 1170.

Mr. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

The purpose of the suit, instituted by Ed. C. Lasater and other taxpayers of Duval County against Alonzo Lopez, County Treasurer, the County Judge, the Commissioners and Marshall White, was to have declared invalid a series of interest-bearing county warrants aggregating $25,000 and maturing in annual installments throughout a period of sixteen and a half years, issued without the authorization of a vote of the property taxpayers to White for the construction of public roads in the county under a contract entered into by the Commissioners Court in the year 1915.

The contract and the warrants were assailed upon various grounds. The several issues of fact, including those of conspiracy and fraud, and whether the warrants were issued by the Commissioners Court in an attempt to evade the laws governing the issuance of county bonds for public road improvements, were determined by the jury in favor of the defendants. The judgment of the District Court sustaining the warrants, was affirmed by the honorable Court of Civil Appeals.

There is but one question presented here. That is, as to the authority of the Commissioners Court to issue the warrants. This involves the subordinate question of whether the instruments issued were warrants or bonds.

The general question is of public interest in its bearing upon the powers of the Commissioners Courts. Because of its importance, we granted the writ of error to afford full argument upon it.

The plaintiffs in error urge two propositions: 1. That under existing laws the Commissioners Court could not validly issue warrants as a means of evidencing the county's debt for the building of the roads and appropriating its revenues for the payment of the debt. 2. That the instruments issued were not warrants, but bonds.

The county was without funds to pay for the construction of the roads, or any considerable part of the expense. As provision for the payment of the warrants, the Commissioners Court levied an annual tax extending for the period of their maturity and until they should be fully paid. The tax levied did not exceed the amount that could be lawfully assessed for road purposes. The taxable values of the county were more than sufficient to provide the amount of the warrants and interest under the tax imposed.

The case, as it stands in this court, is therefore one where a Commissioners Court, in the execution of a duty enjoined upon it by law—the construction of public roads in the county, determined in good faith upon the issuance of county warrants, instead of bonds, as a plan of payment; and intending that the instruments should have the effect of warrants, issued them as such, in full observance of the constitutional requirement in respect to lawful provision for their payment.

Before public securities so issued are invalidated by the judgment of a court it ought to be plain that their issuance was in violation of law.

The powers of the Commissioners Courts in relation to the building of county roads, except as to the limits of taxation for the purpose, are governed wholly by the statutes. This follows from the command of the Constitution, Article XI, Section 2, that the laying out, constructing and repairing of such roads shall be provided for by general laws. It is not necessary to review at length the entire legislation which deals with these powers, but some features of the legislative history of the subject are of importance in considering the question presented for decision.

In the original act organizing the County Courts, the Act of 1846, they were given the power to "lay out and establish, change and discontinue public roads and highways;" erect court houses, jails and other necessary public buildings; and to allow and settle all county accounts and direct their payment. The Commissioners Courts, created by the Constitution of 1876, succeeded to this power. It was conferred upon them by the Act of July 22, 1876; and, as respects county roads, is now expressed in Article 2241 in the identical language of the original act of 1846.

The first act under the present Constitution which authorized the use of county bonds for the construction of public improvements, was the Act of February 11, 1881. It related only to bonds for the building of court houses in counties not having a court house at the county seat. It was amended by the Act of the Special Session of 1884 so as to include bonds for the construction of jails, and authorize bonds for the erection of court houses generally; and further, in respect to the maturity of the bonds, by the Act of March 27, 1885.

In the Revised Statutes of 1895, these acts were substantially embodied as Articles 877 to 881 inclusive.

The issuance of county bonds in relation to the public roads was first authorized by the Act of April 28, 1903,—an amendment of Article 877.

Until 1899 the issuance of county bonds for the purposes authorized by law was within the discretion of the Commissioners Courts, limited only by the constitutional provisions in respect to the tax levied for their payment. By the Acts of April 12 and May 26, 1899, which were substantially identical, this power was qualified. Those acts provided that the power should not be exercised except as previously authorized at an election by the vote of the qualified property taxpayers of the county.

The Act of April 28, 1903, in conferring upon the Commissioners Courts the authority to issue bonds for public road purposes, imposed this same limitation. It declared that such bonds, or county bonds for the construction of court houses, jails or bridges also therein authorized, should not be issued unless voted as required by the Act of May 26, 1899.

The Act of April 28, 1903 was amended by the Act of March 23, 1911 so as to include the establishment of poor houses and farms in the county as a purpose for which county bonds might be issued as provided in the original act.

The Acts of April 12 and May 26, 1899, constitute Articles 605 to 609 inclusive in the Revised Statutes of 1911. The Act of April 28, 1903, as amended, is Article 610.

As a means of providing county roads and these other public improvements under the authority granted and in performance of the duty enjoined by these several acts, the Commissoners Courts, under different limitations, have always possessed the power of taxation. This power was conferred in broad and general terms by the original act under which they were organized. Following the amendment in 1883 of Section 9 of Article VIII of the Constitution, they were invested with the general power—exercisable independently of any authorization from the taxpayers of the county—to lay a tax of not exceeding fifteen cents on the hundred dollars valuation for road and bridge purposes, and not exceeding twenty-five cents on the same valuation for the erection of public buildings and other permanent improvements. The present statute granting this authority is Article 2242.

Without special authority, a court charged with the administration of the business affairs of a county is without the power to issue negotiable securities, depriving the county of true defenses against the original creditor. It is not a power to be implied. It does not exist unless expressly conferred by law. Such is the established doctrine in this State, and has been from an early time. It was affirmed on the

original appeal of San Patricio County v. McClane, 44 Texas, 392, and reiterated in Robertson v. Breedlove, 61 Texas, 316.

County warrants, such as it has been the custom of Commissoners Courts, throughout different periods of the State's history to issue in payment for public improvements, whether interest-bearing or not, have not the character of negotiable instruments. This is the universal rule. It was so announced as to interest-bearing warrants issued for the erection of a court house and jail, on both the first appeal of San Patricio County v. McClane and in the later consideration of that case in 58 Texas, 243. Such instruments are not intended to have the qualities of commercial paper and do not possess them. County warrants serve, in general, as but a convenient mode for conducting the authorized business of the county. It would be disastrous to counties and municipalities to accord to instruments of such nature that attribute of negotiable bills which protects an innocent holder for value from defenses of which he has no notice.

Authorized county bonds, on the other hand, have a different character. They are, essentially, negotiable securities. The statute —Article 625—which makes the certificate of approval of the Attorney General and their due registration *prima facie* evidence of their validity, is in aid of their negotiability.

As has been observed, the use of bonds for the construction of county public improvements was unknown in the laws of the State under the present Constitution until 1881, and in respect to county roads was not authorized until 1903. At the time of the passage of the Act of April 28, 1903, granting authority for their use for county road purposes, Commissioners Courts had the undoubted power, within the limits of lawful taxation and by observance of the constitutional requirement relative to the creation of county indebtedness, to provide for the building of such roads by the issuance of interest bearing county warrants. They had possessed it since the original Act of 1876 providing for their organization. This authority, where it was necessary for the county to use its credit for the purpose, was but a part of the power reposed in those courts to lay out and establish the roads, and proceeded, as well, from their duty to establish them by constructing them as durably as possible within the county's resources or limits of taxation. It was a means for executing the general power expressly granted, a lawful means because appropriate to that end.

On the second appeal of San Patricio County v. McClane the right of a county court in 1861 and 1862 to issue interest-bearing warrants for the erection of a court house and jail was directly challenged. The court held that since under the statute the county court was empowered to provide the county with a court house and jail and to allow and settle all county accounts, the warrants were

lawfully issued. Having the authority to create the debt, but none under the law to issue negotiable paper, a draft or warrant non-negotiable in nature was the only kind of instrument that could well be issued as a mode of evidencing the debt.

When the Act of April 28, 1903 was passed, this was equally true as to the powers of the Commissioners Courts in the building of county roads and incurring county indebtedness for their construction. They were empowered to establish the roads, which included the authority to build them of durable material within their discretion; they could create a lawful interest-bearing debt for the purpose; they had no power to issue negotiable securities in the name of the county; therefore, they were remitted to the issuance of instruments such as warrants, of non-negotiable character, as proper evidence of the debt.

Such being the powers of the Commissioners Courts in respect to the construction of county roads when the Act of April 28, 1903 was passed,—and as known to the Legislature we must assume—the essential question in his case is reduced to simply whether that act's grant of authority for the issuance of negotiable county bonds for public road purposes, amounted to an annulment of the authority then residing in those courts to issue non-negotiable county warrants for the same purpose in those instances where the particular road improvement could be accomplished by that means.

There is nothing in the act itself indicating that the Legislature had any such purpose in mind. If such effect be given the act, it can be done only by construction.

The abrogation of an important public power of long existence and continued legislative sanction, whose lawful exercise will afford a public benefit, ought to rest upon surer ground than the mere construction of statutes. It ought to be found in clear legislative declaration. There is where we would ordinarily look for it, and there is where it should be expressed. Courts have nothing to do with the making of statutes, or the repeal of statutes. They violate their true powers and endanger their own authority whenever they undertake the legislative role. Legislation is for legislatures, not courts.

There is no more valuable rule for the guidance of courts than that which expresses the disfavor with which the law regards the implied repeal of a statute. The reason for the rule is the reluctance of the law to have imposed upon the courts of the land what in its essence is a legislative province. In clear cases of repugnancy between statutes the courts must exercise it, but only in clear cases should they exercise it. The antagonism between the two statutes must be absolute—so pronounced that both cannot stand, before a court is warranted in holding, as a mere matter of construction, an earlier law, or a power conferred by such a law, repealed by implication.

There is no absolute antagonism between the power resting in 1903 under then existing laws in the Commissioners Courts to issue, within lawful ˙limits, county warrants ·for the building of county roads, and the grant of the power to issue county bonds for that purpose made by the Act of April 28, 1903. This is manifest. The power originally possessed was that of issuing for the purpose non-negotiable instruments. The power conferred by the later act was that of issuing for the purpose negotiable securities, and contemplating, necessarily, road improvements upon a larger scale than had been or would be possible through the issuance of warrants. The two powers relate to making use of a county's credit in distinctly different ways and evidencing its debt by instruments of clearly different nature, different in their legal import and different in their legal effect upon the rights of the county under them. There could be no positive opposition in the lawful exercise of both powers.

It could not have been absent from the mind of the Legislature in the passage of the Act of 1903 that in some counties it might be possible for the Commissioners Court to accomplish ˙the desired road improvement within the limits of the county's general power of taxation for such purpose by a smaller expenditure than is ordinarily in view where a bond issue is proposed, and hence without the need of resorting to bonds. The authority in such instances to make lawful use of the county's credit through the issuance of county warrants cannot be denied because of the Act of 1903, unless it is to be held that the effect of that act is to absolutely require the issuance of bonds in all cases by all counties where it is necessary to contract a debt of extended maturity for road improvements. If the authority to issue bonds granted by the Act of 1903 does not exclude the power in such cases to make use of a county's credit for road improvements by all other means, the authority, where necessary, to use it for that purpose through the issuance of warrants still remains in the Commissioners Courts and may be lawfully exercised. The power conferred by the Act of 1903 to issue negotiable bonds is not only a different power from that of issuing non-negotiable warrants, but it cannot in our opinion be regarded as an exclusive power for the additional reason that in the absence of express declaration the Legislature is not to be credited with the purpose of forcing a bond issue upon the people of a county every time it is necessary for the county to create an interest bearing debt of deferred maturity, however small, for road improvement. As has been held repeatedly by the several Courts of Civil Appeals which have dealt with this question as related to the issuance of warrants for the erection of court houses, we think the intention of the Legislature in the Act of 1903 was merely to confer upon the Commissioners Courts an additional power rather ˙than deprive them of an existing authority. Stratton v. Commissioners Court of Kinney County, 137 S. W., 1170; Cowan v. Dupree, 139 S. W., 887;

Commissioners' Court of Floyd County v. Nichols, 142 S. W., 37; Allen v. Abernathey, 151 S. W., 348.

This holding by the Court of Civil Appeals in Stratton v. Commissioners Court, was directly reviewed by this court under the petition for writ of error ably presented in that case. There the Commissioners Court had issued interest-bearing warrants, maturing annually throughout a period of fifteen years, for the erection of a court house. It was strongly urged here that with the Act of April 28, 1903, authorizing the issuance of bonds for the erection of court houses, and with the Act of 1899 making it unlawful for any Commissioners Court to issue bonds of the county for any purpose authorized by law, unless previously voted by the tax payers of the county, the Commissioners Court in that instance had no power to issue and use county warrants for the purpose. The same general question in respect to the use of county warrants for the erection of a court house was thus clearly presented, as is now presented in respect to the use of county warrants for the building of roads. The writ of error was refused.

If the power of Commissioners Courts to issue interest-bearing county warrants of deferred maturity for the erection of a court house was unaffected by the Acts of 1889 and 1903, as was necessarily affirmed by the court's refusal of a writ of error on the application for the writ presented in Stratton v. Commissioners Court, their authority to issue like warrants for the building of roads is equally unaffected by those acts. The operation of the acts could not be other than to deny the authority in both instances, or leave it undisturbed in both. As determined in that case by the refusal of the writ, it was not abrogated by them in the one instance, and so it must be in the other. The decision of the question as related to those warrants was correct. As applied to these, it is equally sound. The authority which it was there held the Commissioners' Court possessed, the Legislature has by no act since withdrawn.

The instruments issued by the Commissioners Court to White cannot be held to be bonds. They have possibly some of the characteristics of bonds, but that does not make them bonds. Their controlling features are those of warrants. That interest coupons were attached to them, as is ordinarily the case with bonds, is not determinative of their nature. The notes attacked in City of Tyler v. Jester, 97 Texas, 344, and which it was contended were essentially bonds also bore interest coupons. The court recognized that they had some of the characterics of bonds, but, with the city empowered to issue notes and the evident intention being to issue nothing else, it was held that such intention should not be denied, but ought to be given effect. That decision governs this feature of the case. Under the jury's verdict, conclusive here upon the issues of fact,

the intention of the Commissioner's Court was to issue only warrants, and it had no purpose to circumvent the laws governing the issuance of county bonds through the use of a device. The instruments issued were as much like warrants as bonds. In our opinion they more resemble warrants. The Commissioners Court had the power to issue warrants. Its intention to do so, with the instruments having essential features of warrants, should be sustained rather than thwarted.

In the issuance of county bonds Commissioners Courts are governed by the laws upon that subject. Their evasion is not to be countenanced. The use of warrants cannot be availed of for their circumvention. If the instruments are in truth warrants, if they be for a purpose for which warrants may be lawfully issued, and in their issuance there is no effort to cheat any law, there can be no occasion for applying to them the laws which relate to bonds.

The judgments of the District Court and Court of Civil Appeals are affirmed.

*Affirmed.*