

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

May 14, 1987

Honorable Kent A. Caperton
Chairman
Jurisprudence Committee
Texas State Senate
P. O. Box 12068
Austin, Texas    78711

Opinion No.   JM-697

Re:  Whether a county may enter
into a lease-purchase agreement
for the purpose of constructing
or purchasing a county jail

Dear Senator Caperton:

You ask whether Texas counties may enter into lease-purchase agreements to purchase or build county jails. You also ask whether special legislative authorization is necessary to vest this power in county government.

A county has authority to purchase a jail from current revenues of the year, if relevant statutory requirements are followed. See Dancy v. Davidson, 183 S.W.2d 195 (Tex. Civ. App. - San Antonio 1944, writ ref'd). A lease-purchase agreement enables the purchaser to spread the purchase price over a number of years, while receiving immediate use of the property being purchased. A typical lease-purchase contract might require the county to make stated payments over a term of years and then transfer ownership of the property to the county upon payment in full or upon payment of an additional stated sum. See, e.g., Sumerlin v. Fowler, 229 S.W.2d 75 (Tex. Civ. App. - Amarillo 1950, no writ); Attorney General Opinion Nos. 0-1680, 0-1627 (1940) (describing lease-purchase contracts). Thus, your question involves the authority of a county commissioners court to commit revenues of future years to the acquisition of a jail, thereby preventing future courts from allocating those funds to other county purposes. See generally Gulf Bitulithic Co. v. Nueces County, 11 S.W.2d 305, judgmt adopted (Tex. Comm'n App. 1928).

A commissioners court has only those powers that the constitution and statutes have specifically conferred upon it, but the court has broad discretion in exercising expressly granted powers. Canales v. Laughlin, 214 S.W.2d 451 (Tex. 1948); Anderson v. Wood, 152 S.W.2d 1084 (Tex. 1941).

Counties have the express power and duty to provide jails. Article XI, section 2, of the Texas Constitution states that "[t]he construction of jails . . . shall be provided for by general laws." Cf. Tex. Const. art. III, §56 (prohibition against local and special laws). Article 2351, V.T.C.S., states that:

Each commissioners court shall:

. . . .

7. Provide and keep in repair court houses, jails and all necessary public buildings.

V.T.C.S. art. 2351, §7; see also V.T.C.S. arts. 1603 (county commissioners court shall provide a jail); 2370b (commissioners court may purchase, construct, or otherwise acquire new jail building); 5115 (commissioners court shall provide safe and suitable jails). Article VIII, section 9, of the Texas Constitution fixes a limit on county taxes for various purposes, including roads, bridges, and other permanent improvements.

We have found no statute which expressly authorizes the commissioners court to acquire a jail under a lease-purchase contract. It has been suggested that article 2368a.2, V.T.C.S., the Public Property Finance Act, authorizes this method of acquiring a jail. However, article 2368a.2, V.T.C.S., applies to personal property and not real property. V.T.C.S. art. 2368a.2, §3(11) (definition of "property"). Moreover, the Act also states:

Notwithstanding any contrary provision, this Act does not apply to a contract solely for the construction of improvements to real property.

V.T.C.S. art. 2368a.2, §9.

Counties have express authority to finance the acquisition of a jail by issuing bonds. See V.T.C.S. arts. 718; 2372o; see also Lasater v. Lopez, 217 S.W. 373 (Tex. 1919) (county may issue bonds only if it has express legislative authority). Cf. Attorney General Opinion JM-642 (1987) (authority of a joint city-county hospital is inapplicable because that opinion relied on the power of the home rule city in question to borrow funds). Article 2368a.1, V.T.C.S., authorizes counties to issue certificates of obligation to pay for the construction of public works, including jails. V.T.C.S. art. 2368a.1, §§3, 7A.

Counties also have implied power to issue interest bearing warrants payable over a period of years to finance jails, courthouses, roads, and other public improvements. Adams v. McGill, 146 S.W.2d 332 (Tex. Civ. App. - El Paso 1940, writ ref'd); see Lasater v. Lopez, 217 S.W. 373 (Tex. 1919); Stratton v. Commissioner's Court of Kinney County, 137 S.W. 1170 (Tex. Civ. App. - San Antonio 1911, writ ref'd). The power to issue warrants has been implied from the statutory authority to make such improvements. Adams v. McGill, supra. In Lasater v. Lopez, supra, the Texas Supreme Court discussed the reasons for implying the power to issue warrants in payment of public works.

In <u>Lasater</u>, the supreme court considered whether a county had authority to pay for road construction by issuing interest bearing warrants maturing over 16 1/2 years without an election. The Act of April 28, 1903, authorized the commissioners court to issue bonds for public road construction upon prior authorization by vote of property tax paying residents. Acts 1903, 28th Leg., 1st C.S., ch. II, at 9 (now codified as V.T.C.S. art. 718). A taxpayer argued that the commissioners court was attempting to issue bonds without holding the election required by statute.

The supreme court rejected the argument. It pointed out that bonds were negotiable instruments and therefore differed significantly from warrants, which could not be negotiated. It also noted that a county had express statutory authority to build roads and other permanent improvements, and to levy a tax to pay for those projects. V.T.C.S. arts. 2351, §3; 2352 (formerly codified as Tex. Rev. Civ. Stat. arts. 2241 and 2242 (1911)). The court held that counties had implied authority to issue warrants in payment for public works as a necessary means of implementing the express statutory authority to build them and tax for that purpose. The authority to pay for roads by issuing warrants predated the 1903 act and was not impliedly repealed by that act. The court stated as follows:

> [T]he use of bonds for the construction of county public improvements was unknown in the laws of the State under the present Constitution until 1881, and in respect to county roads was not authorized until 1903. At the time of the passage of the Act of April 28, 1903, granting authority for their use for county road purposes, Commissioner's Courts had the undoubted power, within the limits of lawful taxation and by observance of the constitutional requirement relative to the creation of county indebtedness, to provide for the building of such roads by the issuance of interest bearing county warrants. They had possessed it since the original Act of 1876 providing for their organization. <u>This authority, where it was necessary for the county to use its credit for the purpose, was but a part of the power reposed in those courts to lay out and establish the roads</u>, and proceeded, as well, from their duty to establish them by constructing them as durably as possible within the county's resources or limits of taxation. <u>It was a means for executing the general power expressly granted, a lawful means because appropriate to that end.</u> (Emphasis added).

217 S.W. at 376.

Thus, in Lasater v. Lopez, the supreme court found that counties had implied authority to use their credit to finance public works. There was a compelling case in favor of such implied authority because the county would otherwise have no means of allocating the cost of essential public works beyond the current budget year. Prior to 1903, the commissioners courts

> were empowered to establish the roads . . . they could create a lawful interest bearing debt for the purpose; they had no power to issue negotiable securities in the name of the county; therefore, they were remitted to the issuance of instruments such as warrants, of nonnegotiable character, as proper evidence of the debt.

217 S.W. at 376. The supreme court also characterized the county's power to issue warrants as "an important public power of long existence and continued legislative sanction. . . ." Id. In summary, it was not merely useful, but essential for counties to have this implied power, and there was strong evidence that the legislature intended counties to have it. The court's dicta, however, indicated that the county's implied power to contract on its credit was not limited to the issuance of warrants.

In San Antonio River Authority v. Shepperd, 299 S.W.2d 920 (Tex. 1957) the supreme court again discussed a county's implied authority to contract on its general credit, this time for flood control. Article VIII, section 1-a, of the Texas Constitution authorizes the counties to levy ad valorem taxes for flood control. Article 7048a, V.T.C.S., now section 4.103 of article 6702-1, V.T.C.S., was enacted in 1949 as an enabling act under article VIII, section 1-a, of the constitution. Section 7 of the act stated that before the constitutionally authorized tax could be levied, it must be "submitted to a vote of the qualified property taxpaying voters of such county." See V.T.C.S. art. 6702-1, §4.103(h). The maximum rate of the tax was subject to approval by the voters, and the tax rate could be changed by future elections, except that it could not be reduced to an extent that would impair any bonds or warrants issued by the commissioners court. 299 S.W.2d at 922 (discussing sections 7 and 10 of former article 7048a, V.T.C.S.). Bexar County approved a tax of 15¢ on each $100 valuation. The commissioners court of Bexar County contracted with the San Antonio River Authority to carry out flood control work on the San Antonio River in Bexar County. As consideration, the county agreed to pay over to the river authority the proceeds of its fifteen cent flood control tax for the next 30 years. The river authority sought to issue bonds secured by the Bexar County tax but the Attorney General declined to approve them. 299 S.W.2d at 923.

The Attorney General argued that Bexar County's contract with the river authority attempted to deprive the voters of their statutory right to change the amount of the tax by future elections. Only bonds

and warrants issued by the county were expressly protected from impairment caused by reducing the tax.  299 S.W.2d at 924.

The court determined that the county had implied authority to incur the future obligations embodied in the contract.  299 S.W.2d at 925.  It construed the express authority to issue bonds and warrants as "an additional power and not the exclusive method of creating an obligation," citing Lasater v. Lopez for this construction.  299 S.W.2d at 925.  The opinion in San Antonio River Authority v. Sheppard quotes the following language from Lasater v. Lopez:

> [I]n the absence of express declaration the Legislature is not to be credited with the purpose of forcing a bond issue upon the people of a county every time it is necessary for the county to create an interest bearing debt of deferred maturity, however small, for road improvement.

299 S.W.2d at 925, quoting Lasater v. Lopez, 217 S.W. 373, 377 (Tex. 1919).  The court in San Antonio River Authority v. Shepperd also stated as follows:

> From the powers thus expressly given to engage in flood control programs and to expend money therefor, the law implies the power to use the general credit of the county to accomplish the desired end. . . .

299 S.W.2d at 925.  It distinguished between borrowing money and obtaining property or labor on credit, in that borrowed money could be diverted from its legitimate purpose, but there was no such danger where authorized services or improvements were obtained on credit. Id. (citing Adams v. McGill, 146 S.W.2d at 332).  The court concluded that the commissioners court could contract on the general credit of the county to carry out flood control, and that such contract might legally involve the county's credit for a number of years.  Since the commissioners court had legal authority to make the contract at the time of the tax election, the voters' right to change the rate could be limited by the contract.

The court in San Antonio River Authority v. Shepperd did not base the county's implied authority to obligate its tax revenues on necessity or on strong evidence of legislative approval of this authority.  It refers to an implied power to use the general credit of the county to carry out its express power to engage in flood control programs.  See also State v. Texas Municipal Power Agency, 565 S.W.2d 258 (Tex. Civ. App. - Houston [1st Dist.] 1978, no writ).  Nonetheless, we believe it is significant that San Antonio River Authority v. Shepperd, like Lasater v. Lopez, involved a constitutional authority to tax for a particular kind of public improvement.  We need not

determine the scope of the county's authority to use its credit to carry out authorized functions.

Based on <u>Lasater v. Lopez</u> and <u>San Antonio River Authority v. Shepperd</u>, we believe that the county has implied authority to use its credit to finance the purchase or construction of a jail, a public work which the constitution regards as essential. <u>See</u> Tex. Const. art. XI, §2; <u>see also</u> Tex. Const. art. VIII, §9. The legislature has moreover enacted statutory requirements for the condition of jails, and has established the Commission on Jail Standards with authority to promulgate and enforce minimum standards for the construction and maintenance of county jails. V.T.C.S. arts. 5115; 5115.1, §9. Counties have also been sued in federal court to compel them to operate jails in accord with constitutional requirements. <u>See, e.g.</u>, <u>Vest v. Lubbock County Commissioners Court</u>, 444 F. Supp. 824 (N. D. Tex. 1977). Given the totality of circumstances, we believe a Texas court would hold that a county has implied authority to finance jail acquisition or construction by methods in addition to those expressly authorized by statute and sanctioned by supreme court opinion. In particular, we believe a county has implied authority to enter into a lease-purchase contract to build or acquire a jail, assuming compliance with all applicable constitutional and statutory provisions.

In concluding that a county has implied authority to acquire a jail through a lease-purchase contract extending beyond the present budget year, we do not approve or comment on the terms of any particular proposed contract. The review of contracts is not an appropriate function for the opinion process. Nor will we set out the provisions that such a contract must or may include. The adoption of detailed guidelines and limitations on a county's power to acquire a jail by lease-purchase contract is a matter for the legislature, if it wishes to act. <u>See</u> V.T.C.S. art. 2368a.2. We are merely expressing the opinion that a county could enter into a lease-purchase contract for a county jail that would pass muster with the Texas courts, assuming compliance with all relevant constitutional and statutory provisions. <u>See, e.g.</u>, Tex. Const. art. III, §52; Attorney General Opinion Nos. JM-274, JM-220 (1984) (county funds and county credit may be used only to accomplish authorized county purpose); Tex. Const. art. XI, §7 (if county creates debt, it must establish a sinking fund).

As previously noted, the legislature has enacted article 2368a.2, V.T.C.S., which expressly authorizes counties to acquire personal property by lease-purchase. We do not believe the enactment of this statute negates a county's implied authority to acquire a jail by lease-purchase contract. Article 2368a.2, V.T.C.S., authorizes various political subdivisions, not only counties, to lease or lease-purchase personal property. It establishes a procedure whereby the validity of a contract may become "incontestable for any cause," and provides that contracts entered into pursuant to the statute are legal and

authorized investments for certain enumerated financial institutions and sinking funds of governmental bodies. See V.T.C.S. art. 2368a.2, §§6, 7. The legislature may have excluded real property and the improvement of real property from article 2368a.2 because it did not want all of these provisions to apply to contracts for the acquisition or improvement of real property. It may not have wished to accord all political subdivisions the power to lease-purchase real property. Article 2368a.2, V.T.C.S., is broad in scope, and the fact that it is inapplicable to contracts for real property does not negate a county's implied authority to purchase or construct a jail on a lease-purchase contract. See Dancy v. Davidson, 183 S.W.2d 195, 200 (Tex. Civ. App. - San Antonio 1944, writ ref'd) (legislature did not intend to restrict the grant of power under article 2351, section 7, by the subsequently enacted article 1605a, which then authorized a county with a city other than the county seat with a population of 20,000 to provide an office building in a city other than the county seat).

## S U M M A R Y

A Texas county has implied authority to build or purchase a jail by lease-purchase contract. All applicable constitutional and statutory provisions must be complied with. The review of contracts is not an appropriate function for the opinion process.

Very truly yours,

JIM  MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General