OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



October 17, 2000

The Honorable Charles D. Penick
Bastrop County Criminal District Attorney
804 Pecan Street
Bastrop, Texas 78602

Opinion No. JC-0295

Re: Authority of a special district with powers and duties of a road district under article III, section 52 of the Texas Constitution to incur indebtedness for a period of more than one year (RQ-0234-JC)

Dear Mr. Penick:

You ask whether Bastrop County Water Control and Improvement District No. 2 (the "District") may, pursuant to its road district authority, incur indebtedness payable from road district fees that will extend beyond the District's ability to pay in one year.[1] The District lacks statutory authority to do so.

The Bastrop County Water Control and Improvement District No. 2 has been granted the authority of a road district by the legislature. In 1989, the legislature granted the District the powers "conferred by the general law of this state applicable to road utility districts created under Article III, Section 52." Act of May 27, 1989, 71st Leg., R.S., ch. 577, § 2, 1989 Tex. Gen. Laws 1914. The 1989 legislation was to expire in two years, but was extended in 1991 for an additional four years. *See id.* § 5, at 1915, *amended by* Act of May 26, 1991, 72d Leg., R.S., ch. 323, § 4, 1991 Tex. Gen. Laws 1363, 1366. The District lost its road utility district powers in 1995 when the bill designed to extend this authority was not adopted. *See* Tex. H.B. 3173, 74th Leg., R.S. (1995). In 1997, the legislature adopted House Bill 706, granting to the District the powers and duties of a road district. *See* Act of Apr. 28, 1997, 75th Leg., R.S., ch. 47, § 2, 1997 Tex. Gen. Laws 116. This bill does not expire until all the road improvements called for under the District's master plan are completed and accepted by the City of Bastrop and Bastrop County. *See id.* § 13, at 118.

The District "has all of the rights, powers, privileges, functions, responsibilities, and duties that the general law grants a road district created under Section 52, Article III, Texas Constitution." *Id.* § 2(a), at 116. Article III, section 52 reads in part:

> (b) Under Legislative provision, any county . . . or defined
> district now or hereafter to be described and defined within the State

---

[1] *See* Letter from Honorable Charles D. Penick, Bastrop County Criminal District Attorney, to Honorable John Cornyn, Texas Attorney General (May 22, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

> of Texas . . . upon a vote of two-thirds majority of the voting qualified voters of such district or territory to be affected thereby, may issue bonds or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such district . . . and levy and collect taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the Legislature may authorize, and in such manner as it may authorize the same, for the following purposes . . . [including the construction, maintenance and operation of roads].

TEX. CONST. art. III, § 52(b). Pursuant to this provision, the legislature may authorize counties, political subdivisions, and defined districts to issue general obligation bonds and to levy a tax upon the property within their boundaries to pay the interest and to redeem those bonds. *See Bell County v. Hines*, 219 S.W. 556, 557 (Tex. Civ. App.–Austin 1920, writ ref'd). The taxes levied under article III, section 52(b) are separate and in addition to the other county road taxes found in article VIII, sections 1-a and 9 of the Texas Constitution. *See* 36 DAVID B. BROOKS, TEXAS PRACTICE: COUNTY AND SPECIAL DISTRICT LAW § 40.3 (1989); *see also* 1 GEORGE D. BRADEN, THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS, 259 (1977) (primary original purpose of article III, section 52(b) of Texas Constitution was to provide for additional taxes for roads and water).

The District has within its boundaries the powers that a county commissioners court has under Chapter 257 of the Transportation Code, "to the extent that chapter can be applied." Act of Apr. 28, 1997, 75th Leg., R.S., ch. 47, § 2, 1997 Tex. Gen. Laws 116. *See* TEX. TRANSP. CODE ANN. § 257.021 (Vernon 1999) (commissioners court of a county to establish road districts as provided by Texas Constitution, article III, section 52). The Board of the District may impose a monthly charge of five dollars for each lot, tract, or reserve, to be used for constructing, maintaining, or repairing public streets or roadways in the District. Act of Apr. 28, 1997, 75th Leg., R.S., ch. 47, § 6, 1997 Tex. Gen. Laws 116, 117. It may not "issue bonds or authorize a tax under . . . [House Bill 706] unless the bond or tax is approved by a two-thirds majority of the voters of the district who vote at an election called and held for that purpose." *Id.* § 7(a), at 117. "Bonds, notes, or other obligations of the district issued or incurred under this Act may not exceed one-fourth of the assessed valuation of the real property in the district." *Id.* § 7(b). These sections are the "Legislative provision[s]" adopted under article III, section 52(b) authorizing the District to issue tax-secured obligations "upon a vote of two-thirds majority of the voting qualified voters." TEX. CONST. art. III, § 52(b); *see* Tex. Att'y Gen. Op. No. JM-1276 (1990) at 1, 3 (creation of debt in road districts is governed by Texas Constitution article III, section 52 and legislation enacted pursuant to that provision).

You state that the District has in the past authorized road construction only to the extent that road district fees have been collected and are available for such projects, thus limiting the amount

of road work that can be done in any year.[2] The District Board would like to borrow the total funds necessary to complete a long-term project, repaying the loan from the road district fees, which are collected annually, over a period of years. *See* Penick Brief, note 2, at 2. You ask the following two questions about the District's authority to borrow money:

> 1. If the Water District, acting under its road district authority does not impose a property tax but looks only to the road district fees for the repayment of the debt, may the District, under its road district authority, incur indebtedness which will extend beyond the ability of the road district to pay in the current year without holding a property owners election in the District?

> 2. If the answer to question #1 is in the negative, then the Water District Board wishes to submit this question: May the Water District Board incur indebtedness requiring repayment over a period of more than one (1) year, without imposing a property tax, with approval of two-thirds (2/3) of the voters in accordance with the requirements of the statute, for incurring indebtedness?

*Id.*

If the District wished to authorize a tax and issue bonds or other obligations secured by the tax, article III, section 52 of the Texas Constitution and House Bill 706 would require the approval of a two-thirds majority of the qualified voters voting at an election held for that purpose. *See* TEX. CONST. art. III, § 52; Act of Apr. 28, 1997, 75th Leg., R.S., ch. 47, § 7, 1997 Tex. Gen. Laws 116, 117; Tex. Att'y Gen. Op. No. JM-1276 (1990). Obligations payable from the future tax revenues of a political subdivision are debts within article III, section 52 and other constitutional authorizations for tax-secured bonds and may be issued only in accord with constitutional requirements. *See McNeill v. City of Waco*, 33 S.W. 322, 324 (Tex. 1895); *City of Corsicana v. Mills*, 235 S.W. 220, 225 (Tex. Civ. App.–Texarkana 1921, writ ref'd).

If, however, a political subdivision enters into a one-year contract payable from its current revenues, such as taxes or fees, it would not be entering into debt for purposes of provisions like article III, section 52. *See McNeill*, 33 S.W. at 324; *Bonham v. Southwest Sanitation, Inc.*, 871 S.W.2d 765, 768-69 (Tex. App.–Texarkana 1994, writ denied) (contract that runs for more than a year but gives the political subdivision a right to terminate it at the end of each year commits current revenues only and does not create debt). In addition, obligations with a term extending beyond a year that are payable from an income source other than tax revenues, such as revenue bonds, are not debts within article III, section 52 and similar constitutional provisions. *See Lower Colo. River Auth. v. McCraw*, 83 S.W.2d 629, 633 (Tex. 1935); *Texsan Serv. Co. v. City of Nixon*, 158 S.W.2d 88, 92 (Tex. Civ. App.–San Antonio, 1941 writ ref'd); Tex. Att'y Gen. Op. No. JM-84 (1983) at 2. Thus,

---

[2]Brief from Honorable Charles D. Penick, Bastrop County Criminal District Attorney, to Honorable John Cornyn, Texas Attorney General at 1-2 (May 22, 2000) [hereinafter Penick Brief].

the legislature may authorize a governmental entity to incur an obligation payable from non-tax revenues without holding an election. *See Texas Pub. Bldg. Auth. v. Mattox*, 686 S.W.2d 924, 928 (Tex. 1985).

However, this does not end our analysis. Statutory authority is necessary to incur a long-term obligation secured by revenues other than taxes. *See Lasater v. Lopez*, 217 S.W. 373, 376 (Tex. 1919) (county may not issue negotiable instruments absent express authority); *see also San Antonio Union Junior College Dist. v. Daniel*, 206 S.W.2d 995, 998 (Tex. 1947) (junior colleges); *First Bank & Trust Co. v. Dumas Indep. Sch. Dist.*, 527 S.W.2d 499, 502 (Tex. Civ. App.–Waco 1975, writ ref'd n.r.e.) (school district). Accordingly, we must determine whether any statute authorizes the District to incur a long-term obligation secured by road fees.

House Bill 706 authorizes the District to issue obligations that are secured by taxes, but it does not expressly authorize any other form of borrowing. *See* Act of Apr. 28, 1997, 75th Leg., R.S., ch. 47, § 7, 1997 Tex. Gen. Laws 116, 117. House Bill 706 also grants the District the powers granted by general law to a road district created under article III, section 52 of the Texas Constitution, and the powers of a commissioners court under Transportation Code chapter 257. *See id.* § 2(a), at 116. We will examine these other sources of law for authority to borrow money on the security of future road district fees.

Chapter 257 of the Transportation Code sets out certain powers of road districts, while chapter 1471 of the Government Code addresses a road district's authority to borrow money and issue bonds for road improvements. *See* TEX. GOV'T CODE ANN. §§ 1471.001(3)(Vernon 2000) (chapter 1471 of the Government Code applies to a road district); .011(b) (authorizing issuance of bonds in the manner provided by article III, section 52, Texas Constitution, for road and turnpike purposes). We find no provision in either statute that authorizes a road district to borrow money secured by road district fees. Chapter 1471 authorizes a road district to issue tax bonds. *See id.* § 1471.011. A road district may also issue refunding bonds or certificates of assessment[3] to refinance any portion of its outstanding bonded indebtedness under the circumstances set out in section 1471.051 of the Government Code. *See id.* § 1471.051; *see also id.* § 1471.052 (bonds or certificates of indebtedness must be secured by pledge of money received from assessment against all taxable real property in the district). Neither chapter 257 of the Transportation Code nor chapter 1471 of the Government Code includes any provision authorizing the District to borrow money on the security of road district fees to be collected in future years.

House Bill 706 grants the District "all of the rights, powers, privileges, functions, responsibilities, and duties that the general law grants a road district created under Section 52, Article III, Texas Constitution." Act of Apr. 28, 1997, 75th Leg., R.S., ch. 47, § 2(a), 1997 Tex. Gen. Laws 116. On the basis of this language, you suggest that the District has the powers of road utility districts under chapter 441 of the Transportation Code. *See* Penick Brief, *supra* note 2, at 2. Road utility districts are also created "under Section 52, Article III, Texas Constitution" to construct,

---

[3]Certificates of assessment are secured by a pledge of revenues received from an assessment against all taxable real property in the district. *See* TEX. GOV'T CODE ANN. § 1471.052 (Vernon 2000).

acquire, improve, and provide financing for roads. *See* TEX. TRANSP. CODE ANN. § 441.011 (Vernon 1999). They are not, however, "road districts" within the language of House Bill 706. The legislature has distinguished between the terms "road districts" and "road utility districts" in other enactments. Section 23.20 of the Tax Code, authorizing a property owner to waive the right to special appraisal of real property, provides that "[t]he rules of the commissioners court apply to waivers applicable to taxing units that are road districts created by the commissioners court . . . [and the] rules of the Texas Transportation Commission apply to waivers applicable to taxing units that are road utility districts subject to the jurisdiction of the commission." TEX. TAX CODE ANN. § 23.20(e) (Vernon Supp. 2000); *see also* TEX. TRANSP. CODE ANN. § 441.002 (Vernon 1999) (Texas Transportation Commission may adopt rules to implement chapter 441 of the Transportation Code). Section 375.091 of the Local Government Code grants municipal management districts the powers of "road districts and road utility districts created pursuant to Article III, Section 52, of the Texas Constitution," also indicating that the term "road district" does not include "road utility districts." TEX. LOC. GOV'T CODE ANN. § 375.091(c) (Vernon 1999); *see also* TEX. TRANSP. CODE ANN. §§ 431.068, 472.003 (Vernon 1999).

Legislation applicable to the District in the past expressly granted it the powers of a road utility district, but House Bill 706 does not do so. A bill adopted in 1989 and amended in 1991 granted the District "all of the rights, powers, privileges, authority, duties, and functions conferred by the general law of this state applicable to road utility districts created under Article III, Section 52, of the Texas Constitution." Act of May 27, 1989, 71st Leg., R.S., ch. 577, § 2, 1989 Tex. Gen. Laws 1914. This legislation expired in 1995. *See* Act of May 26, 1991, 72d Leg., R.S., ch. 323, § 4, 1991 Tex. Gen. Laws 1363, 1366 (changing expiration date from September 1, 1991, to September 1, 1995). House Bill 706 grants the District the powers that "the general law grants a road district created under Section 52, Article III, Texas Constitution." Act of Apr. 28, 1997, 75th Leg., R.S., ch. 47, § 2(a), 1997 Tex. Gen. Laws 116. The District no longer has the authority of a road utility district. We may not look to Transportation Code chapter 441 for statutory authority for the District to incur indebtedness payable from road district fees that will extend beyond the District's ability to pay in one year.[4]

You have not suggested any other provision of law that might authorize the District to incur indebtedness payable from road district fees that will extend beyond the District's ability to pay in one year, and we are aware of none. In the absence of statutory authority, the District may not incur such indebtedness, even if it secured the approval of the voters. Moreover, the District may not hold an election for that purpose, absent express statutory authority to do so. *See Countz v. Mitchell*, 38 S.W.2d 770, 774 (Tex. 1931); *Ellis v. Hanks*, 478 S.W.2d 172, 176 (Tex. Civ. App.–Dallas 1972, writ ref'd n.r.e.); *Smith v. Morton Indep. Sch. Dist.*, 85 S.W.2d 853, 857 (Tex. Civ. App.–Amarillo 1935, writ dism'd) (statutory or constitutional authorization is necessary to call an election). We answer both of your questions in the negative.

---

[4]In view of our conclusion that House Bill 706 does not grant the District any powers of a road utility district under Transportation Code chapter 441, we need not attempt to construe provisions of that chapter or determine whether a particular provision is incorporated by reference into House Bill 706. *See generally San Antonio Union Junior College Dist. v. Daniel*, 206 S.W.2d 995, 998 (Tex. 1947); *Lasater v. Lopez*, 217 S.W. 373, 376 (Tex. 1919); Tex. Att'y Gen. Op. No. JC-0291 (2000).

## S U M M A R Y

The Bastrop County Water Control and Improvement District No. 2 has the powers of a road district established under article III, section 52 of the Texas Constitution, but does not have the powers of a road utility district. The District has no statutory authority to incur indebtedness payable from road district fees that will extend beyond the District's ability to repay in one year.

Your very truly,

JOHN CORNYN
Attorney General of Texas


ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General - Opinion Committee